(No. 18130.—Reversed in part and affirmed in part.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *v.* WALTER MAREK *et al.* Plaintiffs in Error.

*Opinion filed April 20, 1927—Rehearing denied June 10, 1927.*

1. CRIMINAL LAW—*what evidence admissible to show intent in prosecution for confidence game.* In a prosecution of two defendants for the confidence game, where the evidence tends to show that they acted in concert in obtaining money from the prosecuting witness by the fraudulent promise of one of them to marry her, other witnesses may testify that either or both of the defendants obtained money from them on similar promises, for the purpose of showing the intent with which the money was taken from the prosecuting witness.

2. SAME—*when allegation of name of prosecuting witness is sufficiently proved.* While it is essential to a conviction of the confidence game that the name of the person whose property is alleged to have been taken be proved as laid in the indictment, it is sufficient to prove that the person was usually and well known by the name alleged although it may not be the true name, and it may be proved that the name alleged was adopted by the prosecuting witness when she came to this country some years before and that she was generally known by that name.

3. SAME—*when money taken by confidence game is sufficiently proved.* Where an indictment for the confidence game alleges that lawful money of the United States was taken from the prosecuting

witness it is not necessary to prove the exact value or description of the money, and proof that the money taken was money deposited in the name of the complaining witness in a bank organized under the laws of the State, or that it was money paid to the witness as an employee of a reputable civic organization in the city of Chicago, is sufficient to establish the allegation that the money was lawful money of the United States.

4. SAME—*what evidence of another offense is admissible in a prosecution for confidence game.* On a prosecution for a particular crime it is error to introduce evidence of other offenses wholly disconnected from the offense charged for the reason that it does not tend to establish the fact in controversy, but in a prosecution of two defendants for the confidence game it is not error to permit one of the witnesses for the People to state that one of the defendants obtained money from her to obtain the release of the other, who was under arrest in another State.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. WORTH E. CAYLOR, Judge, presiding.

JACOB LEVY, (JAMES M. GWIN, of counsel,) for plaintiffs in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and MERRILL F. WEHMHOFF, (HENRY T. CHACE, JR., and EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Plaintiffs in error, Walter Marek, Adam Bator and Gertrude Stark, were charged by indictment in the criminal court of Cook county with obtaining $2550 from Mary A. Wagner by means of the confidence game, were tried, found guilty and sentenced to the penitentiary. This writ of error is prosecuted to review the judgment.

All the persons involved in this controversy came to this country from Poland. At the time of the trial Mary Wagner was twenty-nine years old and had been in this country eight years. She met Marek at a dance hall in

Chicago in February, 1925. At that time she was employed as a maid at the Chicago Club. Marek was a married man living with his family, but she did not know this. After their first meeting they met by appointment on a number of occasions. She testified that Marek talked about having money which he was investing in real estate and that he asked her whether she had any money; that she told him she had saved $2500; that he proposed marriage to her and that she accepted; that he showed her a three-story house at 835 North Lincoln street and told her it would cost $12,000; that he said he could buy it for $6000 cash and give a mortgage for the remaining $6000; that he asked her to give him some money, and in April she gave him $650 and in May $1750; that he continued to keep company with her until August, when plaintiff in error Bator told her that he and Marek had had an automobile accident in Indiana and had killed a man, and that he needed $150 with which to arrange a bond for Marek; that she gave him the $150; that she did not see either of the men again until she had them arrested, in January, 1926. Miss Wagner testified further that some of the money which she gave Marek was withdrawn from her account with the Kaspar American State Bank and the rest she took from her safety deposit box and from her locker at the Chicago Club. The assistant cashier of the Kaspar American State Bank testified that she withdrew from her account there, $100 April 11, 1925, $325 April 18, and $502.57 May 27.

Mary White, another maid employed at the Chicago Club, testified that she was with Miss Wagner when she met Marek at the dance hall; that in March following, Marek brought Bator with him when he came to keep an appointment with Miss Wagner and her and introduced Bator to them as Tony Stark; that the men took them to a show and later took them home; that they met frequently afterwards; that in June Bator proposed marriage to her

and she accepted; that he asked her for some money to use in fixing up their home, and that she gave him $100; that she gave him various amounts from that time until ·August, when his attentions to her ceased; that all told she gave him $2000, some of which she withdrew from the White Eagle Building and Loan Association, some from the Northwestern Trust and Savings Bank and some from her locker at the club. Officers of the loan association and of the bank testified to withdrawals during this period.

Mary Mysliawa testified that she was with her friend, Sophia Mitral, at the Atlas dance hall in May, 1925, when the plaintiff in error Marek was introduced to her as Joe Marek; that Marek introduced Bator to her and her friend as Tony Miletzki; that the four of them went for an automobile ride, after which the girls were taken to their places of employment in Evanston; that she met Bator frequently after that occasion; that once he drove to a house at 1917 Erie street and told her it was his house; that two persons were there, and they talked to him about paying rent and about moving out of the house when he was ready to occupy it; that he asked her how she liked the place, and she said it was a nice house; that the next time he called on her he told her he needed $3000 with which to close the trade and that a man who had promised to pay him $2000 had failed to keep his promise; that he had but $1000 and that he could get only $1000 out of the other man and wanted to borrow $700 from her; that she said, "Nothing doing; you promised to marry me, and you do that first and afterwards I give you the money;" that he continued to profess his love for her and urged her to give him the money so that he could make her a home; that finally she withdrew $500 from the State Trust and Savings Bank of Evanston, and, adding $250 which she had with her, gave him $750; that later Marek came with him, and after they had called for Sophia the four of them went for a ride; that a few days after this trip he told her he

had to have more money, and assured her she need not be afraid to give it to him because he would marry her and they would have a home; that she gave him another $1000; that on another occasion he told her that he and Marek had had an accident in Indiana; that Marek was in jail and that he had to have $1000 for bonds; that she told him she had no more money, and so gave him no more.

Katie Brzcar, who worked in the kitchen at the Edgewater Beach Hotel, met Marek at a dance hall and danced with him. After a few dances he told her he liked her and thought he would keep company with her all the time. He called to see her a number of times after that and finally proposed marriage to her. She told him she was a widow and had two children in the old country and that she was too old for him, but he said he liked her anyway and wanted her to marry him. Later he said he wanted to exchange his automobile and needed $200. She finally withdrew $89 from the bank, borrowed some money from a girl, and gave him the $200.

The only evidence connecting plaintiff in error Stark with the obtaining of the money of Mary Wagner is the testimony of her and Miss White that Mrs. Stark told them Marek was her brother and Bator her brother-in-law, and that they were prosperous men engaged in the real estate business and that they wanted to get married. There is no claim that she received any of Miss Wagner's money. She denies that she told the girls that Marek and Bator were related to her or that they were prosperous real estate dealers. The evidence in the record is not sufficient to support the conviction of Mrs. Stark.

Both Marek and Bator deny the testimony of the complaining witness and of the three women who testified to being victimized by the same fraudulent scheme. They admit they saw the girls at Mrs. Stark's home and Marek admits that he kept company with Miss Wagner. Bator denies that he was ever out with Marek and the girls, but

admits that he was with Miss White for a short time one evening. Both men deny they had any conversation with the girls about getting married or that they obtained any money from them. The jury saw and heard the witnesses and evidently gave credit to Miss Wagner's story. If the jury believed her testimony they were warranted in finding Marek and Bator guilty, because the proof shows they were acting in concert in obtaining her money by the fraudulent promise of Marek to marry her. (*People* v. *Miller,* 278 Ill. 490.) Evidence of facts which showed that the accused had committed other offenses similar to the one charged was competent for the purpose of showing the intent with which they took the money from Miss Wagner. (*People* v. *Folignos,* 322 Ill. 304.) We cannot find from the examination of the record that the conviction of Marek and Bator is not supported by the evidence.

It is contended that there is a failure to prove a material allegation of the indictment, for the reason that the true name of Mary Wagner is Mary Werjzen. She testified that when she came to America she adopted the name Wagner and that she was generally known by that name. Other witnesses testified to the same effect. While it is essential to a conviction in a case of this kind that the name of the person whose property is alleged to have been taken be proved as laid in the indictment, it is sufficient to prove that the person is well and usually known by the name alleged although it may not be his true name. (*Hix* v. *People,* 157 Ill. 382; *People* v. *Novotny,* 305 id. 549.) The proof in this case was sufficient.

It is next contended that the allegation that the $2550 obtained was lawful money of the United States has not been proven. Miss Wagner testified that the money which she gave to Marek and Bator was money which she had received as wages at the Chicago Club and money which had been delivered to her by the Kaspar American State Bank, where she had a deposit. There was no dispute

on the trial that the money obtained from her, if it was obtained, was lawful money of the United States. The amount of punishment in this case does not in any way depend on the value of the property taken, and there is no necessity to allege or prove the exact value or description of the money taken. To sustain the indictment in this case it was necessary to prove that some lawful money of the United States was obtained, and, where the character of the money is not in issue, proof that the money used was money paid to a depositor by a bank organized under the laws of the State of Illinois and money paid to an employee by a reputable civic organization in Chicago is sufficient to establish the allegation that the money was lawful money of the United States.

It is contended that it was error to show that Marek or Bator had been charged with a crime in Indiana. On a prosecution for a particular crime it is error to introduce evidence of other offenses wholly disconnected with the offense charged, for the reason that it does not tend to establish the fact in controversy. (*People* v. *Ensor,* 310 Ill. 483; *People* v. *Reed,* 287 id. 606.) In this case it was necessary to relate the fact that Bator said that Marek was under arrest in Indiana in order to tell the story of the scheme used by plaintiffs in error to get money from their victims. There was no error in receiving this testimony.

The assistant State's attorney who conducted the prosecution was guilty of improper conduct in his cross-examination of some of the witnesses and in his argument to the jury. The error thus injected into the record is not sufficient, however, to justify a reversal of the judgment.

The judgment of the criminal court of Cook county is reversed as to Gertrude Stark and is affirmed as to Walter Marek and Adam Bator.

*Reversed in part and affirmed in part.*