(No. 34127.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* RICHARD ZIELINSKI, Plaintiff in Error.

*Opinion filed January 24, 1957—Rehearing denied March 19, 1957.*

CHARLES A. BELLOWS, and JASON ERNEST BELLOWS, both of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and JOHN GUTKNECHT, State's Attorney, of Chicago, (FRED G. LEACH, EDWIN A. STRUGALA, IRWIN D. BLOCH, JOHN T. GALLAGHER, RUDOLPH L. JANEGA, and WILLIAM L. CARLIN, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

After a jury trial in the criminal court of Cook County, the defendant, Richard Zielinski (also known as Richard Green), was found guilty of murder and sentenced to a term of 60 years in the penitentiary.

The defendant and four others were indicted for the murder of a Des Plaines policeman, who was shot during the robbery of a finance company office in that city on August 28, 1952.

In addition to other evidence implicating the defendant, the State produced two written statements in which he confessed to the crime. On this writ of error, the defendant contends that the trial court erred in admitting these confessions and that apart from them there is insufficient evidence to support the verdict. He claims he confessed because of beatings received from the police and because of a promise by one of them that he would be given only a 14-year sentence if he signed a confession.

The defendant was arrested on August 29, 1952, and taken to the office of the State's Attorney for questioning.

Afterward, he was taken to the scene of the crime and then back to the police station. There is evidence that he orally confessed to police officer Petacque that evening, but no written statement was made.

The following afternoon, from 1:45 to 2:00 P.M., the defendant was questioned by assistant State's Attorney Brumlik in the presence of police officers Olsen, Lynch, and Connelly, and the remarks were transcribed by a short-hand reporter. After the defendant had disclosed where the gun was which he used in the shooting, the session was interrupted so that they might go there to recover the weapon. Later that night, at around 8:10 P.M., the questioning resumed. An additional 21 pages of questions and answers were taken, covering in detail all aspects of the crime and showing the defendant's part therein. This confession was signed by the defendant, and the police officers signed as witnesses.

To recover the gun, the parties went at the defendant's direction to a residence in Schiller Park. On this occasion, another statement was taken, with Brumlik again doing the interrogating. Present also were State's Attorney Boyle, sheriff Babb, two assistant State's Attorneys, four police officers, the occupants of the residence, plus "newsmen and photographers." This statement had to do primarily with the defendant's activities subsequent to the crime, with particular reference to how he had sought to dispose of the gun. This confession, also, was signed by the defendant.

The defendant's first argument is that the confessions were procured by force, which issue was decided adversely to him after a preliminary hearing outside the presence of the jury.

To support his charge of police brutality, the defendant testified that he was slapped by a police officer during his first ride from his home to the police station, and after they got there was struck at least ten times. And according

to his testimony, later that night he was suspended above the floor by a rope through handcuffs behind his back and beaten until he passed out. This, he said, was done by "three large police officers," whom he did not know or ever see subsequent to that time.

However, this was all denied by ten law officers, each of whom was with the defendant at various times. Eight police officers and two assistant State's Attorneys testified that there was no violence or abuse of any kind. Moreover, the defendant produced no medical or photographic corroboration. A physician who examined him on September 3, 1952, testified he did not have any marks or bruises on his body, with the exception of some injuries on his thighs and buttocks which the defendant said were due to an old motorcycle injury.

Proof of a confession by a preponderance of the evidence is sufficient to establish its voluntary character. (*People* v. *Lindsay,* 412 Ill. 472; *People* v. *Rogers,* 413 Ill. 554.) With no corrobation for the defendant's story and no discrediting of the State's witnesses, it was proper for the trial court to admit the confessions. *People* v. *Gavurnik,* 2 Ill.2d 190.

We next consider the assertion that the confessions were induced by the promise of some benefit.

In this regard, the defendant points to a conversation he had with officer Petacque on the evening of August 29. According to the defendant, Petacque said he would get the defendant 14 years if the defendant would "go along with him." But Petacque denied this. On the contrary, the officer testified that after the defendant had inquired as to whether what had been done might not be manslaughter, he told him: "That's not my job, that's strictly up to the State's Attorney to decide what the charge shall be."

So far as this record discloses, the defendant never told anyone, including any of the prosecuting officers, of this alleged promise of Petacque, and on the following

day, when he gave his lengthy written confessions, no mention was made of any such promise. The trial court is vested with considerable discretion in ruling on the admissibility of confessions, and we think it properly concluded that the confessions in question were not induced by the promise of benefit.

The defendant makes an additional argument with respect to the confession taken in Schiller Park. He states that it should be held inadmissible, since some of those present, including the State's Attorney and two of his assistants, were not called as witnesses to testify regarding its voluntary character. However, even if we were to agree that the trial court should have insisted that more of those present testify to the circumstances surrounding the execution of this particular confession, which appears to have been made in public, that would not affect the result of this appeal. For there is still evidence of oral confessions, plus the extensive written statement taken at the police station. Even without the Schiller Park statement there is abundant evidence to prove the defendant's guilt.

Finally, the defendant complains of an allegedly prejudicial remark made by the prosecutor during the course of the trial.

When the confessions were offered in evidence, the defense counsel objected on the ground that they were involuntary, to which the assistant State's Attorney replied: "I object to that, your Honor, that has already been decided." Defense counsel took exception to this, saying that nothing had been decided. The court stated: "Now just a second, he has a right to make any objections. The statement of the State's Attorney will be stricken from the record." Defense counsel pressed further: "I don't know whether the jury heard it, your Honor. I would like the jury instructed directly that the statement of Mr. Grant (the prosecutor) was improper," and the court concluded the colloquy as follows: "The court will strike the state-

478

ment of the State's Attorney from the record and the jury will disregard that statement."

The defendant's written motion for a new trial did not assign this point as error, and it cannot therefore be urged on review. (Cf. *People* v. *Flynn*, 8 Ill.2d 116, 118-9.) However, even if properly before us, we would not regard it as prejudicial error. The trial judge promptly ordered the remark stricken and instructed the jury to disregard it. The defendant went on to testify regarding his claim of force and abuse in extracting the confession, and the jury were correctly instructed on the law. Under the circumstances, we do not believe the remark could reasonably have affected the verdict, and "Unless it is apparent that a defendant is injured by improper remarks, a judgment of conviction will not be reversed on that ground alone." *People* v. *Franklin*, 415 Ill. 514, 521.

The evidence proved the defendant guilty of murder, and we do not believe prejudicial error intervened at his trial. Accordingly, the judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*