People of the State of Illinois, Plaintiff-Appellee, v.
Lorenzo G. Canada, Defendant-Appellant.

Gen. No. 50,344.

First District, Fourth Division.

March 10, 1967.

Emilie N. Wanderer, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and E. Roger Horsky, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE ENGLISH delivered the opinion of the court.

Defendant was convicted of murder and sentenced to life imprisonment. However, the conviction was reversed and remanded for failure of the trial court to instruct the jury on manslaughter. People v. Canada, 26 Ill2d 491, 187 NE2d 243. On September 12, 1963, a second jury found defendant guilty of voluntary manslaughter and the court sentenced him to a term of six to twelve years. Defendant appealed to the Supreme Court which transferred the case here.

Defendant and William Cunningham, deceased, both resided in a rooming house located at 5225 South University, Chicago. Defendant's room was on the first floor of the building and Cunningham's was situated

directly over defendant's. Mrs. Irma Pickens, the key witness for the State, rented a basement apartment on the premises. Unless otherwise indicated, it is from her testimony that the recital of facts in this opinion was derived. About 1:15 a. m. on November 27, 1960, an argument developed between defendant and deceased over whether deceased had informed the landlady that defendant had been making noise. Deceased denied making such a statement, but defendant advanced up the stairs toward deceased, stopping on the way to break a glass against the wall, and engaged the deceased in further argument. A fight started, but other tenants intervened. Defendant then ran downstairs to his room and when he returned to the second floor he carried with him a glass of liquid, a club, and two knives in his back pockets. Deceased reappeared from his room with a hatchet and a hammer, and the two men resumed their fight until it was again broken up by neighbors. At about 2:00 a. m., when deceased was leaving the rooming house, defendant struck him with a club and chased him out of the building. Deceased returned to his room shortly thereafter with a girl friend, and after a period of time left the building to walk her home. At approximately 3:30 a. m. deceased reentered the building. At this time defendant, Mrs. Pickens, and some guests were all sitting in Sweetie Claybourn's apartment on the first floor of the building. Defendant walked over to the doorway to see who had come in. Deceased had stopped to sit down on a little desk in the hallway. The two men exchanged insults and then defendant took a knife out of his back pocket and, holding it up to deceased's throat, threatened to run the knife through him. Deceased began to walk up the stairs with defendant in close pursuit carrying a club, a knife in his right hand, and a knife in his back pocket. (There was other testimony that deceased carried no weapons at this time.) Defendant pushed deceased as he followed him up the

stairs. Deceased then turned around to defend himself and brought his right hand down, knocking defendant to one knee on the stair below him. As deceased lifted his foot to kick defendant, the latter brought his knife up, piercing deceased in the right thigh, severing the femoral vein. Deceased grabbed the club from defendant and knocked him down the stairs, after which he ran up the stairs and collapsed in front of his room. (Two witnesses for the defendant disputed Mrs. Pickens' testimony that she personally witnessed the occurrence. They claimed that Mrs. Pickens came on the scene after the fight when deceased lay bleeding in front of his second-floor room.)

Mrs. Eleanor Parks, the landlady of the rooming house, testified that when she arrived on the premises at approximately 2:00 a. m. she observed no weapons on the person of deceased, but that defendant had a knife in each pocket of his pants and a container in his hand with something in it which an onlooker described to her as acid. She also testified that she had observed defendant chasing deceased around the building; that she returned to her own apartment after requesting both men to remain peaceful; that at about 3:30 a. m. defendant and Sweetie Claybourn appeared at Mrs. Parks' apartment, and defendant said to her: "You better call an ambulance because I have cut Cunningham and he lying up there."

Two police officers who were summoned to the scene of the occurrence testified that they heard defendant answer, "I did it" in response to an inquiry as to who had done the cutting. Further, another police officer testified that the point and center portions of a knife were separately found on the stairs leading to the second floor, and the handle of the same knife was discovered beneath a table on the first floor.

Defendant testified on his own behalf, and his account of the occurrence was substantially different from that

225

of Mrs. Pickens. According to defendant, when he left Sweetie Claybourn's apartment at about 3:30 a. m. deceased jumped off the desk in the hallway and struck him with a club. Defendant further testified that deceased had a knife stuck in his belt at this time, and that he hit defendant on the head and began kicking him; that he (defendant) tried to escape this attack by running into his apartment, but that deceased followed him and kicked the door open. Defendant then stated that as he reached for a fruit bowl to defend himself, deceased ran out the door, stumbled in the hallway, and ran up the steps. Defendant said he first learned of deceased's injury when he heard Mrs. Pickens "hollering" that someone was bleeding.

Defendant first contends that he is entitled to discharge under the four-month statute then in effect, which provided as follows:

> Any person committed for a criminal or supposed criminal offense, and not admitted to bail, and not tried by the court having jurisdiction of the offense, within four months of the date of commitment, shall be set at liberty by the court, unless the delay shall happen on the application of the prisoner, or unless the court is satisfied that due exertion has been made to procure the evidence on the part of the People, and that there is reasonable grounds to believe that such evidence may be procured at a later day in which case the court may continue the cause for not more than sixty (60) days. . . . Ill Rev Stats (1959), c 38, § 748.

On November 30, 1962, the first conviction of defendant was reversed and remanded. People v. Canada, 26 Ill2d 491, 187 NE2d 243. The case was redocketed on February 8, 1963, and continued until February 27, 1963. On that date defendant was arraigned, and the cause was continued to April 8, 1963. The record shows

226

that this continuance was at the request of both the State's Attorney and defendant's counsel. After several more continuances at the request of the State, on July 16, 1963, defendant entered a motion for a discharge under the four-month statute. This motion was denied. On August 6, 1963, defendant made a motion for a reconsideration of the petition for discharge, but the court reaffirmed its previous denial of the petition. Also on August 6, 1963, the State moved for an extension of time under section 748 of the statute quoted above. The court granted this request and the cause was continued to September 9, 1963, on which date the trial was commenced.

Defendant's contention that the four-month statute compels his discharge may be subdivided into two basic aspects:

1. That the State's failure to bring defendant to trial within four months of November 30, 1962 violated the terms of the four-month statute.
2. That the trial court erred in granting the State's motion for an extension of time on August 6 because the State failed to show good cause why such an extension should have been granted. The effect of the court order of August 6, 1963, was to defer the trial of defendant to a date beyond the four-month period commencing April 8, 1963.

On February 27, 1963, defendant's counsel appeared at the arraignment of defendant. The record shows that at that time she questioned the court as to the proper procedure to employ if she were to request a continuance. The court responded that her request for a continuance would be granted. In addition, the court informed her of the importance to the State of the four-month statute. The following colloquy then occurred among the court, State's Attorney, and defense counsel:

■■■■■■

The Court (Judge Harewood): In the first instance we usually give time about a month.

Defense Counsel: If we could have some time around the first of April. That would save coming down; then we would likely get to trial.

The Court: Then by agreement. I couldn't—

State's Attorney: We will agree if she wants a date 2nd week in April.

Defense Counsel: First week in April would be all right.

The Court: All right, by agreement, let's say—

Defense Counsel: 4th or 5th.

The Court: Well, the 5th is Friday, so—

Defense Counsel: Suppose we go over to the second week in April then.

The Court: April 8th by agreement.

. . . . . .

The Court: You don't mind being here on that day?

Defense Counsel: No.

The Court: All right, by agreement.

In defendant's petition for discharge filed in the trial court on July 16, 1963, the happening on February 27 was described as follows: "The trial was assigned to Hon. Richard A. Harewood, and a date of trial was agreed upon by the attorney for the defendant and Mr. Zimmerman, Assistant State's Attorney." It was then stated in defendant's petition that "the date of trial on April 8, 1963 was fixed as a date mutually agreeable to the defendant's counsel and the State's Attorney" but that this did not constitute a request for a continuance to that date.

■ Where an accused has sought and obtained a continuance within the four-month period or has agreed to such a continuance, the four-month period ceases to

run and the defendant is not on that account entitled to a discharge. People v. Williams, 27 Ill2d 327, 329, 189 NE2d 314; People v. Rankins, 18 Ill2d 260, 262, 163 NE2d 814; People v. Ephraim, 17 Ill2d 527, 528, 162 NE2d 431; People v. Niemoth, 409 Ill 111, 116, 98 NE2d 733. Defendant's counsel argues that her conduct on February 27, 1963, as set forth above, cannot be construed as engendering an agreement by defendant to a continuance, or, in the alternative, that her own inexperience before the Criminal Court of this State produced the "agreement," and such fact should not redound to the disadvantage of defendant.

■ ■ Both arguments fail to convince. First, it is well settled that the four-month statute will not run where defendant's counsel requests or stipulates to a continuance, as was undoubtedly the situation here. People v. Rogers, 26 Ill2d 599, 602, 188 NE2d 22; People v. Tillman, 26 Ill2d 552, 554, 187 NE2d 731; People v. Clark, 17 Ill2d 486, 492, 162 NE2d 413. The argument relating to inexperience of defendant's counsel cannot be accepted, since the record shows that the trial court explained to her the importance of the four-month statute and, in addition, we note the success of defendant's counsel in obtaining reversal of defendant's conviction in his first trial. Counsel does not even argue that she was inexperienced in criminal practice generally, but only in this jurisdiction.

The second aspect of defendant's contention pertaining to the four-month statute is also without merit. Defendant argues that the State failed to make a proper presentation of a motion for extension of time on August 6, 1963. In support of this argument, defendant refers us to cases in which criminal defendants have been unsuccessful in their appeals from trial court denials of extensions of time to procure additional evidence. People v. Coniglio, 353 Ill 643, 187 NE 799; People v. Williams, 309 Ill 492, 141 NE 296; People v. Donaldson,

255 Ill 19, 99 NE 62. These cases involved section 738 (Ill Rev Stats (1961), c 38, § 738), and the court pointed out that the party seeking a continuance under that section must assert facts in an affidavit upon which the court may determine whether a proper degree of diligence has been exercised and whether it is probable that absent witnesses may be produced at a later date. Section 738 provided:

> When affidavit is made for a continuance in behalf of the people or any defendant in a criminal case on the ground of the absence of a material witness, the State's attorney, or the defendant, as the case may be, shall not be required to admit the absolute truth of the matter set up in the affidavit for continuance, but only that such absent witness, if present, would testify as alleged in the affidavit; and if so admitted, no continuance shall be granted, but the case shall go to trial, and the party admitting the same shall be permitted to controvert the statements contained in such affidavit by other evidence, or to impeach such absent witness the same as if he had testified in person: Provided, that the court may, in its discretion, require the opposite party to admit the truth absolutely, of any such affidavit when, from the nature of the case, he may be of opinion that the ends of justice require it: Provided, further, that this Act shall not apply to applications for continuances made within 30 days from the day on which the indictment is found or information filed.

■ ■ In the instant case, however, the State did not proceed under this section 738, but rather under section 748, quoted earlier in this opinion. We agree with defendant that the State's petition contains the type of conclusions, unsupported by facts, which have been found insufficient under section 738. However,

section 748 requires neither affidavit nor motion, but only that the court be satisfied that due exertion has been exercised to obtain the relevant evidence on behalf of the State and that there is reasonable ground to believe that such evidence will be obtained in time for trial at a designated later date not more than sixty days from the time the continuance is granted. People v. Tamborski, 415 Ill 466, 472, 114 NE2d 649. The two sections of the statute are not necessarily in conflict. They may be reconciled by application of the well-established principle of statutory construction that a provision intended to apply in a particular situation will prevail over, and be treated as an exception to, a provision designed for general application. Board of Education v. City of West Chicago, 55 Ill App2d 401, 404, 205 NE2d 63; Jansen v. Illinois Municipal Retirement Fund, 58 Ill App2d 97, 105–106, 206 NE2d 249.

 It is irrelevant that Sweetie Claybourn, the witness for whose appearance the State sought the continuance, failed to appear at the trial, since the question of whether the granting of the continuance was a reasonable exercise of discretion by the court must be viewed as of the time the petition was considered. People v. Poland, 22 Ill2d 175, 178, 174 NE2d 804. A careful examination of the record reveals a discussion in which the court attentively listened to extended argument for and against the granting of the continuance. The language of the Poland case [at p 178] is especially apt in this situation:

> Under the circumstances, we must assume that the court was satisfied that due exertion had been made to secure the evidence and that there were reasonable grounds for believing that it could be procured at a later date. The continuance was granted before the expiration of the four-month period and was well within the sixty days authorized by the

statute. We cannot say that the trial judge abused his discretion in granting the continuance. The defendant, therefore, is not entitled to be discharged on the ground that he was not tried within the time provided by law.

We conclude, after careful study of the record, that the trial judge in the case at bar did not abuse his discretion when he granted the State's petition for a continuance from August 6 to September 9, 1963.

██ ██ Defendant next contends that the evidence at the trial was insufficient to establish defendant's guilt beyond a reasonable doubt. We have reviewed the evidence and cannot say that it is so unreasonable, improbable and unsatisfactory as to generate in the mind of this court the reasonable doubt necessary to overturn the jury verdict of guilty. People v. Sustak, 15 Ill2d 115, 123, 153 NE2d 849. While there are differences between the testimony of defendant's witnesses and that of the State's key witness, Mrs. Irma Pickens, it is well settled that the testimony of a single witness is sufficient to sustain a conviction if the jury believes the evidence and it is not so improbable as to create a reasonable doubt of defendant's guilt. People v. Greer, 28 Ill2d 107, 111, 190 NE2d 742; People v. Brengettsy, 25 Ill2d 228, 231, 184 NE2d 849; People v. Luckett, 24 Ill2d 550, 553, 182 NE2d 696.

 Defendant argues at length that the State's failure to introduce into evidence deceased's trousers raises the presumption that such evidence would have been disadvantageous to the State's case. It is defendant's position that examination of the trousers would have revealed no cut or tear in the cloth, thus substantiating defendant's theory that deceased in some way accidentally caused his own death. We see no reason why the trousers were not as accessible to defendant as to the State, but, in any event, "neither the

jury nor this court is required to conjure up hypotheses from the evidence (or lack thereof) that are inconsistent with defendant's guilt, and elevate these potential explanations to the status of a reasonable doubt." People v. Kelley, 29 Ill2d 53, 59, 193 NE2d 21. See, also, People v. Russell, 17 Ill2d 328, 331, 161 NE2d 309.

Defendant also argues that statements made by him before he was advised of his right to counsel should not have been received in evidence. He relies on Escobedo v. Illinois, 378 US 478, even though he had made no request for counsel. That distinction removes this case from Escobedo and brings it within the rule of People v. Hartgraves, 31 Ill2d 375, 202 NE2d 33. Further, the guidelines of Miranda v. Arizona, 384 US 436, are "available only to persons whose trials had not begun as of June 13, 1966." Johnson v. New Jersey, 384 US 719, 734. Examination of the record reveals no evidence of involuntariness in the taking of defendant's statements, and we find no error in their admission into evidence.

Defendant also contends that the court erred in denying his motion to have an anatomical chart taken into the jury room. The State's Attorney objected and explained his reasons, but advised the court that he would have no objection to the passing of the chart among the jurors in open court. After a brief discussion, defendant's counsel agreed to this alternative. Whether or not certain evidence should accompany the jury to the jury room rests in the sound discretion of the court, and unless the course taken by the court is prejudicial to the accused, the action of the trial court will not be disturbed. People v. Allen, 17 Ill2d 55, 62–63, 160 NE 2d 818; People v. Ciucci, 8 Ill2d 619, 625, 137 NE2d 40; People v. Hauck, 362 Ill 266, 273, 199 NE2d 821. That the jury was given unrestricted time to examine the chart in question immediately prior to retiring to the

jury room leaves us convinced that the court did not abuse its discretion and that no prejudice resulted to the defendant by virtue of the ruling.

■■ Alleged error involving improper closing argument by the State's Attorney is not subject to review, because defendant did not see fit to make timely objection thereto in the trial court. People v. Winters, 29 Ill2d 74, 80, 193 NE2d 809; People v. Donald, 29 Ill2d 283, 287, 194 NE2d 227.

■■ Finally, defendant argues that prejudicial error occurred when the trial judge, some time after the jury had retired to deliberate, recalled the jury to the jury box and inquired of the foreman: "If the jury deliberated longer, is it possible that the jury will arrive at a verdict?" Defendant relies on People v. Brothers, 347 Ill 530, 180 NE 442, but we find in that case nothing which would require reversal in the case at bar. The trial judge here did not, in our opinion, say or do anything which was calculated to influence the jury's verdict.

The judgment of the Criminal Court of Cook County is affirmed.

Affirmed.

DRUCKER and McCORMICK, JJ., concur.