**People of the State of Illinois, Plaintiff-Appellee, v. Mae Gillespie Adams, Defendant-Appellant.**

**Gen. No. 50,229.**

First District, Third Division.

February 27, 1969.

George C. Adams, of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, James Haddad, James Zagel, and James Heelan, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

This is an appeal from a conviction for theft in the amount of $11,248.44. Trial was by jury, and the court imposed a sentence of one to five years in the State Institution in Dwight, Illinois.

The defendant contends: 1) that she was not proven guilty beyond a reasonable doubt; 2) that the court erred in not discharging her under the Four-Term Statute; 3) that there was a fatal variance between the indictment and the proof; 4) that evidence was improperly excluded; and 5) that the trial court and the prosecution were guilty of misconduct which would justify a reversal of the conviction.

On August 31, 1962, the defendant was employed as a cashier at the Wells-Harrison Currency Exchange which was one of eight currency exchanges comprising the Regal Currency Exchange System, Inc. She had been initially employed by the system in 1948 and had spent some time working in the company's main office. While working in the main office, the defendant worked with Bea Fogle who daily checked the reports of the various cashiers in each of the eight exchanges.

Each cashier was required to make out daily reports which were sent to the main office to be checked by Bea Fogle. These reports indicated the amount of money on hand at the beginning of the day, the amount of money which was deposited with the bank, the amount of money which was shipped from the bank to the exchange, the amount of checks that were cashed, and other data

which reflected all other services performed at that exchange for a given day. In addition to this daily report, the cashier submitted fee sheets and duplicate deposit tickets which were dated by the cashier and which showed the content and the amount of the day's deposit. The shipments and deposits were transported by the Armored Express Company. The money shipped to the exchange was credited to an account maintained by the exchange at the Exchange National Bank. The money that was deposited was debited to this account. Tickets debiting and crediting the account were sent to the main office.

The evidence produced by the State was designed to show that the defendant had embezzled funds by reporting that deposits were made on a particular day when in fact such deposits were made several days later and by not reporting the receipt of money shipments from the bank until several days after such shipments were actually received. Such a manipulation of the reported dates of shipments and deposits would enable the defendant to continue to cover up an increasing shortage of funds. Such a procedure would have the effect of decreasing the amount of cash that the defendant should have on hand at the exchange if the dates of the shipments and deposits had been correctly recorded in her daily reports.

Mr. Abe Greenfield, the President of the Regal Currency Exchange System, Inc., testified for the prosecution. He stated that the theft did not become immediately apparent to him because he treated the delays as items "in transit" between the exchange and the bank. However, in February, 1962, the bank notified him that his account was overdrawn in the sum of $22,000. Subsequently he was notified of other instances of overdrafts. In order to determine whether these overdrafts were caused by delays in the transporting by Armored Express, he went to the exchange operated by the de-

fendant to check Armored's receipt book which was kept at the exchange and which contained the date of each pickup signed by the Armored messenger. The dates in the book had been obliterated, and the defendant informed him that the book had fallen into a pail of water. Greenfield then made a detailed comparison between the daily reports and the bank statements, whereupon he discovered that there had been as much as a four-day delay between the time of actual deposits and the date such deposits were recorded by the defendant. Delays were also found in the reporting of money shipments. The witness made an unannounced check at the exchange on August 31, 1962, after being advised by Bea Fogle that the defendant had requested that three shipments be made on that day. One shipment was in the amount of $9,400 and the other two shipments were each $10,500. Greenfield was met at the exchange by an investigator from the United States Fidelity and Casualty Company and by Richard Wayne of the Burns Detective Agency.

Greenfield further testified that he counted the defendant's cash on hand which amounted to approximately $3,000, which revealed about a $700 shortage. He noticed that the defendant had reported only one of the two $10,500 shipments which were supposed to have been made that day. If this shipment had been reported, the record would have revealed a shortage of about $11,200. The witness stated that he told the two men that there was a $700 shortage but also that there was a possibility of a much larger shortage.

On the next day, September 1, 1962, Greenfield received the tickets from the bank which revealed that the two $10,500 shipments had in fact been made on August 31. Accompanied by a Chicago Police Officer, Richard O'Leary, the complaining witness went to the exchange and discovered a completed daily report for the prior day which reported both shipments but which

was not the same report he had reviewed with the defendant on August 31. Greenfield again counted the money in the outer safe which still amounted to about $3,000. This still indicated a shortage of about $11,200. Mr. Greenfield denied that he ever had a key to the inner safe and he denied that $13,000 was placed into the inner safe on August 31, 1962.

George Klauser, the chief auditor for the State's Attorney's Office in the financial and fraud division, testified for the State that he conducted an audit of the books and records of the exchange for the period from January 31, 1962, to August 31, 1962. He compared the deposits as listed in the daily report with the bank statement and the records of Armored Express so as to determine precisely when these deposits were picked up and deposited in the bank. Mr. Klauser stated that his audit revealed a systematic pattern of delayed deposits which occurred at the end of every week and at the end of every month and that in May and June the delays occurred more frequently. He further testified to some delays in the reporting of money shipments to the exchange. As a result of these manipulations, the witness stated that on August 31, 1962, there was a shortage of $11,248.44.

The prosecution also presented the testimony of Captain David Purtell of the Chicago Police Department's Scientific Crime Detection Laboratory. The witness was firmly established as an expert in the field of document analysis. It was his conclusion, based upon a series of scientific tests of the Armored Express' Receipt Book, that the obliterations of dates contained therein could not have been caused by the book's falling into a pail of water and then being retrieved.

The defendant attempted to show that there was about $13,000 on hand on August 31, 1962, and that at some time between that date and September 4, 1962, when Armored opened the empty inner safe, someone had tak-

401

en the money from the inner safe, thus creating the shortage. The defense called one Cora Perry, a former employee of the system, who stated that she believed the main office had a key to the inner safe but that she did not know if such was the case after February, 1962, since she left the system's employ at that time. The defense next called Mr. Walter Williams, an accountant and an admitted friend of the defendant's husband, who testified that he conducted an audit for the month of August, 1962, and found no wrongdoing on the part of the defendant. On cross-examination, it became apparent that the witness had not concerned himself with the timing of the recorded deposits and shipments. Officer O'Leary, also an admitted friend of the defendant, was presented in an apparent attempt to impeach Greenfield's testimony that there never was $13,-000 on hand on August 31, 1962. On cross-examination, this witness' direct examination was impeached to the extent that O'Leary in no way controverted the testimony of Greenfield.

In urging that the facts adduced at trial do not establish the guilt of the defendant, the defendant places great stress on the fact that the alleged thefts were not detected for a period of months and thereby attempts to point the finger of guilt at someone other than the accused. There is nothing in the record to support this contention. Greenfield explained the "in transit" treatment given to the deposits and shipments. The testimony of the State's auditor clearly revealed a systematic pattern of delays in the reporting of shipments and deposits. Greenfield's testimony, if accepted by the triers of fact would support a guilty finding. There was also the testimony of the State's document expert casting doubt on the manner of the obliteration of the dates in the Armored Express' receipt book. The verdict indicates that the jury accepted the testimony of the State's witnesses rather than that offered by the

402

defense. The credibility of the witnesses was a matter of determination for the triers of fact, and upon review of the record, we find no reason to disturb the jury's finding.

■ The next issue raised is whether the defendant was brought to trial within the required period as set forth under the Four-Term Act (c 38, § 748, Ill Rev Stats 1961 (now c 38, § 103–5)). Section 748 reads in pertinent part:

> ". . . If any such person shall have been admitted to bail for an alleged offense, other than a capital offense, he shall be entitled, on demand, to be tried within four months after such demand: Provided, that if the court shall be satisfied that due exertion has been made to procure the evidence on behalf of the People and that there is reasonable ground to believe such evidence may be procured at a later day the court may continue the cause for not more than sixty (60) days."

In the instant case, the defendant was arrested on July 23, 1963, and was admitted to bail. The State was granted several continuances and on December 18, 1963, the defendant was arraigned. The record does not disclose a demand for trial on any date prior to December 18, 1963. The State argues that even on December 18, 1963, the defendant did not make a clear demand for trial, but we find it unnecessary to decide this question since, assuming arguendo that proper demand was made on that date, the defendant was tried absent a violation of section 748. On April 10, 1964, the State asked the court for an extension of time in order to locate an alleged material witness, Richard Wayne. This petition was supported by an affidavit, and the court granted a forty-day extension. Trial commenced on May 20, 1964. Therefore, a violation of the Four-Term Act could only arise if the granting of the forty-day extension was improper. It is

the defendant's position that the State could have easily located the witness and that the petition for an extension was merely a subterfuge and was in fact fraudulent. There is no evidence before us to show fraud or subterfuge on the part of the State's Attorney. It is interesting to note that Richard Wayne was called by both the prosecution and by the defense, and, as the defendant's own witness, he testified that on August 31, 1962, Greenfield told him at the currency exchange that there was a shortage of $700 but that there was a possibility that there might be a much larger shortage. Such testimony corroborates Abe Greenfield and in no way supports the defendant's theory that Greenfield had admitted on August 31 that there was $13,000 in the inner safe. In any event, even if subsequent events cast doubt on the importance or materiality of such a witness, these events are irrelevant to the issue whether the trial court abused its discretion in granting an extension to secure such a witness. In People v. Poland, 22 Ill2d 175, 174 NE2d 804, the defendant contested the granting of an extension to allow the State to locate an alleged material witness when in fact the State never called the witness. In rejecting the arguments of the defendant similar to those in this case, the Supreme Court said at page 178:

> "In determining whether the granting of the continuance was a reasonable exercise of discretion, the situation must be viewed as it was presented to the trial judge at the time, not as it might appear in retrospect in the light of subsequent events. . . . Under the circumstances, we must assume that the court was satisfied that due exertion had been made to secure the evidence and that there were reasonable grounds for believing that it could be procured at a later date. . . . We cannot say that the

trial judge abused his discretion in granting the continuance."

(See also: People v. Canada, 81 Ill App2d 220, 225 NE2d 639.) In the case at bar, the trial court granted the extension upon a written affidavit of the State, and we are not prepared to say that the trial judge abused his discretion in so granting the extension.

■■ The defendant also contends that there was a fatal variance between the indictment and the proof which caused her to be misled in preparing her defense. The indictment charged the defendant with theft on August 31, 1962, but at trial evidence was adduced to show numerous acts of alleged embezzlement between January, 1962, and August, 1962. It has been legislatively and judicially recognized that a crime such as embezzlement is a continuing offense and is not complete until the last known act in furtherance thereof has been committed. (SHA, c 38, § 3–8, Committee Comments; People v. Barrett, 405 Ill 188, 90 NE2d 94; People v. Preble, 316 Ill 233, 147 NE 124.) In People v. Dore, 339 Ill 415, 171 NE 554, the defendant had objected to evidence being admitted to show that he had presented worthless checks to cover up a shortage on dates subsequent to the date alleged in the indictment. In rejecting the defendant's argument, the court said at page 419:

"The cashing of the checks on October 6 and 8, and the presentation of the checks on October 9, were all part and parcel and a continuation of the same confidence game by which, during a considerable period, the plaintiff in error had obtained money from the bank. While every indictment must allege the commission of the offense charged on a certain date within the time fixed by law for its prosecution, yet, unless, time is an essential ingredient of

■■■

the offense, proof that it was committed at some time prior to the filing of the indictment and within the period prescribed by the Statute of Limitations is sufficient . . . . The evidence to which the plaintiff in error objected was therefore admissible." (p 419)

It has also been held that in a prosecution for practicing a confidence game which also is a continuing offense, transactions occurring both prior to and subsequent to the offense charged are admissible to establish the intent of the accused. (People v. Levato, 330 Ill 498, 161 NE 731; People v. Marek, 326 Ill 11, 156 NE 772.) Therefore, we find no merit to this argument advanced by the defendant.

■ Another argument advanced by the defendant is that certain testimony of Officer O'Leary was improperly suppressed by the trial court. The record indicates that the court allowed the defense witness to ultimately testify to the content of the conversations which he had with Greenfield at the currency exchange on September 1, 1962. The defendant also attempted to elicit testimony from O'Leary as to a conversation between Greenfield and the defendant at the police station at which time Greenfield purportedly urged the defendant to plead guilty so that she could remain in his employ and pay back the stolen funds at a rate of $30 per week. Defense counsel was not permitted to cross-examine Greenfield as to what was said at the police station because the witness did not testify on direct examination to any conversations at the police station. The trial judge was given no indication that the defendant was attempting to lay a foundation for later impeachment so as to avoid the pitfalls of the hearsay rule. This Court fails to understand how such a purported statement would aid the defendant's cause. In fact, it would appear that

406

such a statement would serve to incriminate rather than to exculpate the defendant. Furthermore upon a review of the entire record, we conclude that the statement's exclusion, even if it was erroneous, would not be so prejudicial as to constitute reversible error.

The defendant's brief is replete with accusations of unfairness and prejudice of the trial judge and of the prosecution. The record of proceedings contains over 1,200 pages many of which are filled with repetitious and groundless objections made by defense counsel. There are several instances when the court made comments to defense counsel in an attempt to insure an orderly and disciplined trial. Upon a review of the record, this court is unable to find any comments made by either the State or the court which would so prejudice the defendant so as to require a reversal of her conviction. The defendant even accuses the State of initimidating one of the defense witnesses prior to her testifying at trial. There is nothing in the record to substantiate such a charge.

For the foregoing reasons, the conviction of the defendant is affirmed.

Affirmed.

SCHWARTZ and DEMPSEY, JJ., concur.