THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EDWARD R. GAMBLE, Defendant-Appellant.

First District (3rd Division)    No. 61029

Opinion filed August 5, 1976.

Marshall Weinberg, of Reilley, Bell, Weinberg & Levinson, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Sandor Klapman and Neal Walter, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE MEJDA delivered the opinion of the court:
Defendant, Edward R. Gamble, was arrested April 5, 1973, and indicted for the murder of Richard Wright. After a bench trial he was found guilty of aggravated battery causing great bodily harm, and sentenced to the Illinois Department of Corrections for a term of 3 to 9 years. Defendant appeals and contends: he was denied a speedy trial; the trial court erred in denying his motions to quash arrest and to suppress statements; the trial court erred in allowing an unlisted witness to testify; and he was not proved guilty beyond a reasonable doubt. We affirm.

James Taylor testified at trial for the State. He knew defendant as "Sonny" and Wright as "Smiley." At about 8:30 or 9 a.m. on March 23, 1973, on his way to the Woodlawn Tavern, he spoke to Wright who was sitting on a fireplug near the tavern. He did not see a weapon in Wright's possession. Taylor then went into the tavern where he had a drink and greeted defendant who was also drinking. Defendant then left with a woman and returned alone about 10 minutes later. His hands were bloody and he had a bloody knife. He washed his hands and the knife, folded it and put it into his pocket. Before defendant walked out, one Henry Greene spoke with Taylor. Taylor then saw some of Wright's friends take

defendant to an alley and beat him; a police wagon then took defendant away.

Investigator Robert Lewis of the Chicago Police Department testified for the State. On April 5, 1973, he and Investigator White were assigned to investigate the death of Richard Wright. They interviewed a number of people, including Taylor, and also talked with defendant in his home. Lewis told defendant he had received a message on March 31 to contact defendant, who now told Lewis that he wanted to talk with the police, that he was having trouble with some members of the Blackstone Rangers. Lewis asked if he wanted to accompany them to the station to view photographs to identify "the person who he had trouble with." Defendant went with the officers about 12:30 p.m., and they went into an interrogation room at the station where Lewis later told defendant he was under arrest. His *Miranda* rights were read to him and he indicated he understood them. When Lewis told defendant he was under arrest for stabbing Wright, defendant said he did not know Wright, but when asked if he knew Smiley, he replied that he did and had accidentally stabbed Smiley while fighting with the Blackstone Rangers. Lewis told defendant that Smiley had died, and asked if he wanted to make a statement to an Assistant State's Attorney. He told defendant he did not have to do this, but defendant said he wanted to. At about 1:30 p.m., Assistant State's Attorneys Klapman and Walter talked with defendant outside the presence of Lewis. Later, Lewis and White returned to the area where the stabbing occurred and interviewed Henry Greene. At about 8:30 p.m. Lewis told defendant there was an eyewitness and asked if defendant would give a written statement to the Assistant State's Attorney. Defendant said he would, and later met with Assistant State's Attorneys Sconza and Fagan and a court reporter.

On cross-examination Lewis stated that defendant was a suspect in the case when he and White went to defendant's home. Afterward, at the station, defendant told them his nickname was Sonny; he was then arrested and advised of his constitutional rights. Lewis also testified that defendant had been in the police station from about 12:30 p.m. to 9 p.m. prior to giving his statement to the Assistant State's Attorneys before a court reporter, and that at some periods defendant was handcuffed to the wall. Further, that before making such statement, Lewis had told defendant that a witness had been located who had seen the stabbing and that defendant's wife could also be charged with the crime since the witness placed her at the scene.

Assistant State's Attorney Neal Walter was called to testify for the State. The trial court overruled defense counsel's objection that Walter's name was not on the list of witnesses previously filed by the State and that there was no indication of the nature of his testimony before he was called.

Walter testified that on April 5, at about 1:15 p.m., he and Assistant State's Attorney Klapman and Investigator White had a conversation with defendant, who told them of the trouble he had with the Blackstone Nation a year before the stabbing; that he was on probation for unlawful use of weapons; that on March 23, as he and his wife were talking to Smiley after they left the tavern, four men with weapons pulled up in a car and started to beat defendant; Smiley was between defendant and one of his attackers, and as defendant was wresting a knife away from an attacker Smiley was accidentally cut; also, that defendant told people in the tavern he had blood on his clothing because four men had attacked him.

The State offered into evidence the statement made by defendant before Assistant State's Attorneys Sconza and Fagan and the court reporter. After the trial court denied defense counsel's oral motion to suppress this statement, defense counsel stipulated that the questions and answers therein were asked and answered by the named parties on that date, and the statement was accepted into evidence. In the statement defendant stated that on March 23, when he asked Wright to repay a loan, Wright pulled a knife and said not to bother him. Defendant then got possession of the knife and when Wright said he would repay the loan, defendant stabbed him. When he saw that Wright was bleeding he offered to help him, but Wright said he would be all right and walked away. Defendant returned to the tavern and when the blood on his hands was noticed he explained that he had a misunderstanding with Wright and had cut him. Persons from the bar followed defendant outside and beat him into unconsciousness. A further stipulation was entered that if the coroner's pathologist was called he would testify that death was the result of stab wounds to the abdomen.

## I.

Defendant first contends that he was denied a speedy trial and was therefore entitled to discharge under Section 103—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1973, ch. 38, par. 103—5). He was in continuous custody and on August 24, 1973, answered ready for trial. On December 20, 1973, the 119th day of his term, the State petitioned for a 60-day extension of the time in which to bring him to trial. The written petition alleged that Henry Greene was a material and essential witness, that due exertion had been exercised, that several unsuccessful attempts had been made to locate Greene, and that there were reasonable grounds to believe he would be located at a later date. The prosecutor stated in open court that Greene was "about the sole occurrence witness," and that police officers and two investigators for the State's Attorney were present in open court to advise that they had

reasonable expectation of finding Greene with the assistance of Taylor, who had just been located and was present in court under subpoena. Further, that Taylor said he would assist them in their search for Greene. The prosecutor also stated that he was asserting as an officer of the court that Greene was an essential witness.

Defense counsel then objected to the petition as follows:

"Mr. Levinson: I am moving at this time to strike paragraph 3 as a conclusion. Moving at this time to strike paragraph 4 as a conclusion. Moving to strike paragraph 5 as a conclusion. I would ask the Court if the Court won't strike these paragraphs. I am objecting to a continuance. This is I believe the 118th day—

Mr. Norris: 119th day.

Mr. Levinson: 119th day of the term. The case was set with subpoenas. There is no evidence within the petition, it isn't verified, no evidence within the petition that—of what attempts have been made, why they have reasonable grounds to believe that they can find this witness. On those bases I am objecting."

The trial court then granted an extension to February 15, 1974, and also granted the State's motion to continue the case to January 23, 1974. Over objection by the State the court also reduced defendant's bond to $10,000 and released him on his personal recognizance. Thereafter, on January 23, defendant appeared and demanded trial; however, the court granted the State's motion to continue the cause until February 14. On February 14 defendant filed a petition for discharge which petition was denied. The case proceeded to trial on the latter date.

Defendant argues that it was an abuse of discretion to grant the petition without a hearing on the issues of fact raised when defense counsel objected to the State's petition for an extension of time. Section 103—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1973, ch. 38, par. 103—5) provides in part:

"Speedy Trial.) (a) Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant, by an examination for competency ordered pursuant to Section 104—2 of this Act, by a competency hearing, by an adjudication of incompetency for trial, by a continuance allowed pursuant to Section 114—4 of this Act after a court's determination of the defendant's physical incapacity for trial, or by an interlocutory appeal.

(b) Every person on bail or recognizance shall be tried by the court having jurisdiction within 160 days from the date defendant demands trial unless delay is occasioned by the defendant, by an examination for competency ordered pursuant to Section 104—2 of

this Act, by a competency hearing, by an adjudication of incompetency for trial, by a continuance allowed pursuant to Section 114—4 of this Act after a court's determination of the defendant's physical incapacity for trial, or by an interlocutory appeal.

(c) If the court determines that the State has exercised without success due diligence to obtain evidence material to the case and that there are reasonable grounds to believe that such evidence may be obtained at a later day the court may continue the cause on application of the State for not more than an additional 60 days.

(d) Every person not tried in accordance with subsections (a), (b) and (c) of this Section shall be discharged from custody or released from the obligations of his bail or recognizance."

■■ Whether an extension of the 120-day period provided for under subsection (a) of the statute should be granted under subsection (c) is a decision which lies within the discretion of the trial court, and its decision will not be disturbed unless there has been a clear abuse of discretion. (*People v. Arndt* (1972), 50 Ill. 2d 390, 280 N.E.2d 230; *People v. Poland* (1961), 22 Ill. 2d 175, 174 N.E.2d 804.) When the State petitions for an extension of the statutory period the State as the moving party is required to make a showing of diligence. We note that section 103—5 has been construed not to require an affidavit in support of the State's petition. (*People v. Bey* (1973), 12 Ill. App. 3d 256, 298 N.E.2d 184; *People v. Canada* (1967), 81 Ill. App. 2d 220, 225 N.E.2d 639.) Allegations of fact in support of such a motion will prima facie satisfy the State's burden to make a showing of diligence in the absence of any denial of those allegations by defendant. However, if defendant denies the truth of the State's allegations, those allegations are thus put at issue and the State must then present evidence in support thereof. *People v. Moore* (1975), 27 Ill. App. 3d 337, 326 N.E.2d 420; *People v. Bey.*

■■ In the instant case defendant maintains that the State's unsupported allegations were placed in issue when defense counsel objected to the State's petition and "further denied that these allegations were true." The record reveals, however, that defendant's objection to the State's petition was directed only to its sufficiency in that it contained mere conclusions but "no evidence" of the statements contained therein. Nowhere does defendant deny the truth of the State's allegations. Under these circumstances we cannot say that as a matter of law it was an abuse of discretion for the trial court to grant the State's petition for an extension of the time in which to bring defendant to trial without a hearing.

■■ Defendant also argues that it was fundamentally unfair for the trial court to release defendant on his personal recognizance on the 119th day of continuous incarceration and thus allow the State 160 days

therefrom in which to bring him to trial (Ill. Rev. Stat. 1973, ch. 38, par. 103—5(b)). The record shows that in granting the State's petition the trial court ruled that "[t]ime is extended to February 15th, case is continued on Motion State to January 23rd." On January 23, defendant appeared and demanded trial; however, the court granted the State's motion to continue the case until February 14. On February 14 defendant filed a petition for discharge which was denied and the case immediately proceeded to trial. Since defendant was brought to trial prior to February 15, within the 60-day extension, we fail to see how he was prejudiced. We conclude that defendant is not entitled to discharge on the ground that he was not tried within the time required by law.

## II.

■■ Defendant next contends that the trial court erred in denying his motion to quash arrest and suppress his oral statement. He first argues that he was arrested without probable cause when the police took him from his home, and that, while in custody before he was given his *Miranda* warnings, he incriminated himself by telling the police that his nickname was Sonny. The State argues that defendant was not in custody or under arrest at the police station until after volunteering the information that he was nicknamed Sonny.

A statement made by a defendant during custodial interrogation cannot be used by the State unless certain procedural safeguards have been used to protect the person's privilege against self-incrimination. (*Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.) Where a person is merely a suspect and is neither in custody nor can reasonably believe himself to be in custody, it is not necessary that *Miranda* warnings be given. (*People v. Helm* (1973), 10 Ill. App. 3d 643, 295 N.E.2d 78.) The question is whether the statement arose out of custodial interrogation. The *sine qua non* for invoking the *Miranda* rule is that the interrogation be focused on the accused while he is "taken into custody or otherwise deprived of his freedom of action in any significant way. [Citation.]" *People v. Tolefree* (1972), 9 Ill. App. 3d 475, 478, 292 N.E.2d 452, 454.

■■ Defendant argues that from the moment the police arrived at his home he was under arrest and that when he advised them his nickname was Sonny, such was an admission "pursuant to a custodial interrogation where the Defendant was a major suspect in a murder case." However, Investigator Lewis testified that defendant summoned the officers to his home to discuss certain unrelated gang activity, then accompanied them to the police station to view photographs concerning that particular matter. Further, that it was then the defendant told the police his nickname, after which he was placed under arrest and given *Miranda* warnings. No coercion or other compulsion is alleged as to the making of

the statement. Under these circumstances we find that defendant's admission as to his nickname was made prior to the time he was arrested or "taken into custody or otherwise deprived of his freedom of action in any significant way." Therefore, no *Miranda* warnings were required at that time.

Defendant also argues that since he was arrested without probable cause, any statement made by him both before and after his *Miranda* warnings is "the fruit of the poisonous tree" and should have been suppressed. (*Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407.) We have previously determined that it was only after defendant admitted his nickname that he was arrested. He was then given the *Miranda* warnings, after which he made an oral statement that he had accidentally stabbed Wright. We find that following the admission as to his nickname the police had probable cause to arrest defendant. There is no contention that the foregoing statement given after the *Miranda* warnings was coerced.

■■ Defendant further argues that the unsigned statement made before Assistant State's Attorneys Sconza and Fagan and the court reporter was involuntary and should not have been admitted into evidence since it was made after the police "threatened" to arrest his wife for the murder if he did not cooperate. The record shows that on cross-examination Investigator Lewis testified in pertinent part:

"No, I didn't tell him that I would charge his wife. I said that we had found a witness who said that he was in the company of a woman we believed to be his wife when this incident occurred.

"Q. I am asking the direct question, did you or your partner, in your presence, advise the defendant, Mr. Gamble, that his wife could be charged with this crime also?

"I think I told him that, myself, or my partner, that there was a possibility since she was there, we had a witness who placed her at the scene."

It is within the discretion of the trial court to determine by a preponderance of the evidence whether a confession is voluntary. (*People v. Zielinski* (1957), 10 Ill. 2d 473, 140 N.E.2d 722, *cert. denied*, 355 U.S. 845, 2 L. Ed. 2d 54, 78 S. Ct. 68. The trial court's determination will not be disturbed on review unless palpably erroneous. (*People v. Dagge* (1973), 10 Ill. App. 3d 726, 295 N.E.2d 336.) It appears that the police had information that defendant was accompanied by his wife at the time of the incident. There is nothing in the record to indicate that the remarks of the officers under the circumstances were so inherently coercive to be a "threat" which would render defendant's statement involuntary. We find no error in the court's determination.

The trial court did not err in denying defendant's motion to quash arrest and suppress his statements.

### III.

■■ Defendant further contends that the trial court erred in permitting Assistant State's Attorney Walter to testify as to an alleged oral admission. Defendant objected that Walter's name was not on the list of witnesses filed by the State nor was there any indication of the nature of his testimony.

In answer to defendant's prior discovery motion the State had listed Assistant State's Attorney Klapman as a possible witness as to defendant's statement made to Walter, Klapman and Investigator White. Klapman's testimony was summarized in a police report furnished defendant, but Walter's was not. On the second day of the three-day trial the State notified defense counsel that Walter would be called instead. The court allowed Walter to be called over defendant's objection. Defense counsel was then furnished with notes from the felony unit and was granted his request for a five-minute interview with Walter. Walter testified as to defendant's oral admission to having accidentally stabbed Wright.

The allowance of unlisted witnesses to testify is within the discretion of the trial court, and on review that determination will not be disturbed unless defendant shows surprise or prejudice. (*People v. Jones* (1973), 13 Ill. App. 3d 684, 301 N.E.2d 85.) Here, defense counsel had been furnished a summary of Klapman's proposed testimony pertaining to the interview conducted by him and Walter. He had also been furnished with notes from the State's files and was granted an interview with Walter prior to the latter's testifying. The record does not show any surprise or prejudice. The trial court did not err in permitting Walter to testify.

### IV.

■■ Finally, defendant contends that he was not proved guilty beyond a reasonable doubt. He argues that the trial court necessarily relied on his statements in finding him guilty of aggravated battery causing great bodily harm, although two of the statements alleged the stabbing was accidental and the third indicated that defendant, even after the stabbing, was helping the victim walk away; further, that there was no evidence to make any one statement more believable than the others. Also, that specific intent to commit the offense was not shown.

A statement or declaration of a defendant, although not sufficiently comprehensive as a confession, may be an admission. (*People v. Allen* (1969), 117 Ill. App. 2d 20, 254 N.E.2d 103; *People v. Rollins* (1970), 119 Ill. App. 2d 116, 131, 255 N.E.2d 471.) No admission is conclusive as a

matter of law, and an admission is only an item of evidence to be weighed with all the other evidence in the case. (18 Ill. L. & Pr. *Evidence* §131, at 263 (1956); also see *McDonald v. Risch* (1967), 90 Ill. App. 2d 445, 232 N.E.2d 569, *rev'd on other grounds*, 41 Ill. 2d 242, 242 N.E.2d 245.) The credibility of an admission is for the trier of fact, and where there are inconsistencies between several admissions in evidence, the trier of fact may accept all, parts or none of the admissions. (See *People v. DiGerlando* (1964), 30 Ill. 2d 544, 198 N.E.2d 503.) On review, the trial court's determination will not be disturbed unless the proof is so unsatisfactory as to justify reversal. *People v. Rogers* (1974), 18 Ill. App. 3d 940, 310 N.E.2d 854.

In the final oral statement given before Assistant State's Attorneys Sconza and Fagan, defendant stated that he argued with Wright over money, that he hit Wright in the face, that Wright pulled out a knife which defendant was able to wrest from him, that he shoved Wright up against a fence, then stabbed him two or three times. In two other oral statements, however, defendant indicated that the stabbing was accidental. All of the statements were in evidence, in addition to the testimony of the witnesses. The trial court was entitled to believe and accept all, parts or none of the admissions in evidence and thereby determine that no valid inconsistencies existed that would make such statements unworthy of belief. Furthermore, intent may be inferred from the use of a deadly weapon, the character of the assault, or other circumstances. (*People v. Shields* (1955), 6 Ill. 2d 200, 127 N.E.2d 440.) The trial court's finding of guilt beyond a reasonable doubt is adequately supported by the evidence and will not be disturbed.

V.

For the foregoing reasons, the judgment is affirmed.

Affirmed.

McNAMARA and McGLOON, JJ., concur.