THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CARLOS OLIVIER, a/k/a COLLINS OLIVER, STEVE FOLEY, and IKE KITCHEN, Defendant-Appellant.

(No. 55739;

First District—February 9, 1972.

Gillis, Gildea & Rimland, of Chicago, (Kenneth L. Gillis and Jack P. Rimland, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Richard Jalovec, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE BURMAN delivered the opinion of the court:

Carlos Olivier, also known as Collins Oliver, Steve Foley and Ike Kitchen, defendants, together with Larry Martin and Paul Martin, were charged in indictment number 69-1113 with the offenses of aggravated battery with a deadly weapon, to-wit: a gun, conspiracy with intent to commit the offense of aggravated battery, intimidation with intent to prevent a witness from testifying, communicating with a witness and conspiracy with intent to communicate with a witness, all relating to one Frank Mitchell. In indictment 69-1114, the defendant, Carlos Olivier, was also charged with the offenses of intimidation with intent to prevent

a witness from testifying, attempted murder by shooting, aggravated battery with a deadly weapon, and communicating with a witness, all relating to one Charles Conner. The two indictments were consolidated for trial.

Defendants Kitchen, Foley and Olivier, were found guilty by a jury of the violent crimes on the two counts of aggravated battery and of conspiracy to commit aggravated battery against Frank Mitchell and were acquitted of the other verbal crimes against Mitchell. The defendant, Olivier, was also found guilty of aggravated battery and attempted murder upon Charles Conner and not guilty of the verbal crimes against Conner. Larry Martin was acquitted of all charges and Paul Martin died before the trial. Ike Kitchen was sentenced to a term of five to ten years. Steve Foley was sentenced to a term of four to eight years. Carlos Olivier was sentenced in indictment 69-1113 to a term of seven to ten years and in indictment number 69-1114 to a term of seven to fifteen years, the sentences to be served concurrently.

The defendants first made a direct appeal to the Supreme Court, but the case was transferred to this court. Defendants contend that (1) they were prejudiced by the State's introduction of evidence about the "Blackstone Rangers" because such evidence was inflammatory, (2) the defendant, Kitchen, was deprived of a fair trial by the State's introduction of an unrelated arrest into evidence, (3) the State failed to prove that Kitchen and Foley were responsible for the acts of Olivier, (4) defendant, Carlos Olivier, was entitled to a new trial because the prosecutor's remarks in closing argument prejudiced him and (5) the sentences given to Olivier were excessive.

■■ The defendants contend they were prejudiced by the State's introduction of inflammatory evidence about the "Blackstone Rangers" and the misdeeds of said group. We agree that a defendant's guilt must be established "by legal and competent evidence, uninfluenced by bias or prejudice raised by irrelevant evidence, or by unjustified aspersions or insinuations tending to inflame the minds of the jury." (*People v. Wilson,* 400 Ill. 461, 481, 81 N.E.2d 211, 221.) It is also clear that the prosecution may not bring forth evidence which has no tendency to prove the issue being tried, but only serves to cause the jury to believe a defendant to be a bad person, and hence likely to be guilty of the crime charged. Evidence of this nature has been repeatedly and consistently condemned. (*People v. Lewis,* 313 Ill. 312, 145 N.E. 149; *People v. Newman,* 261 Ill. 11, 103 N.E. 589.) On the other hand, evidence which is relevant and otherwise admissible, need not be excluded because it may also have a tendency to prejudice a defendant. (*People v. Jackson,* 22 Ill.2d 382, 176 N.E.2d 803.) A reading of all the testimony

in the record in the case at bar leads us to the conclusion that there is no merit to defendants' contention.

Charles Conner testified that on January 26, 1969, at about 10 P.M., he and Frank Mitchell attempted to break up a scuffle between some young people. They then went to Frank Mitchell's apartment on the third floor of 4526 Oakenwald Avenue. Later a small boy told Frank Mitchell that someone across the street wanted to see him. As Conner and Mitchell opened the front door of the building, Conner was shot in the right thumb and Frank Mitchell was hit above the heart. Conner did not see who shot them, but Larry "Poncho" Dameron, a juvenile, was arrested in connection with the shooting. Conner was scheduled to appear at a juvenile court hearing set for February 4, 1969.

Conner again went to the Oakenwald building at about 10:30 P.M. on February 2, 1969. He saw Ernest Mitchell and his girl friend on the steps between the first and second floor. The defendant, Carlos Olivier, and two other fellows were standing at the bottom of the stairs. One of that group asked Conner if he was · going to press charges against "Poncho" and he said "yes". Fifteen or twenty minutes later, while he was walking down Oakenwald with one William White, Conner was hit by shotgun pellets in the head, neck, back and thigh.

Ernest Mitchell, Frank's brother, testified that at about 10:15 P.M. on February 2, 1969, he was at 4526 Oakenwald with his girl friend. He saw Carlos Olivier and two other people in the hallway. He saw Conner come through the door. As Conner walked up the steps Ernest heard him say "Yes, I am." Ernest took his girl friend home, then proceeded back walking south through an alley behind 4526 Oakenwald. He heard a shotgun blast and ran toward his gangway. When he got there, he saw Olivier running toward him carrying a double-barreled gun, twelve to eighteen inches long.

Thomas Mitchell, a brother of Frank and Ernest, testified that on February 2, 1969, he left 4526 Oakenwald at about 10:00 P.M. with Gregory Bell and Clarence Woodhouse. He saw Charles Conner and William White walking south on Oakenwald. As Thomas faced south, he saw Carlos Olivier run out of the gangway and shoot Conner with a sawed-off shotgun. Ernest Mitchell then came through the gangway, and he and Thomas flagged down a police car at 47th Street. Thomas saw defendant Foley at this location.

The witness further testified that later in the evening he went with his brother, Frank, Bell and Woodhouse to Boyd's Lounge. While there, Larry Martin came up to Thomas and asked him if Frank Mitchell was his brother. When Thomas said "yes" Martin said to him, "Well, you better get outside because the Stones are getting ready to jump on him."

Thomas said he ran outside and saw ten to fifteen Rangers coming from west to east. He heard Steve Foley say, "There he is right there," and saw him pointing at Frank Mitchell. Then Larry Martin jumped out of the crowd and told Frank, "Ike told you not to mess in Stone business," and hit Frank twice in the jaw. Frank turned to Kitchen and said, "Why don't you tell your fellows to leave me alone?" Kitchen said, "I can't do that, because this is a Stone thing." Thomas testified that Frank was turning to go into the tavern when somebody grabbed him and said, "Well, come on out here, man. Let's get this thing straight right now." Then Carlos Olivier stepped up and fired a small hand gun five times at Frank. Thomas stated that he had not seen Olivier before the day of the shooting, but he had seen Martin, Kitchen and Foley before.

Frank Mitchell testified that on January 26, 1969, at about 10:30 P.M., he was shot while coming out of his home at 4526 Oakenwald with Charles Conner. Larry "Poncho" Dameron was charged and Mitchell was scheduled to appear on February 4, in Juvenile Court to testify against him. On February 2, Mitchell was at his home at 4526 Oakenwald with his brothers, Thomas and Ernest, Clarence Woodhouse, Gregory Bell, Charles Conner and others. He left at about 10 P.M. with Bell and Woodhouse. While walking south on Oakenwald, he heard a shotgun blast. He ran back, saw Conner and White, and put them in a squad car. He saw his brother, Ernest, talking to Steve Foley. Frank walked up to them and Steve said, "All of you is not going to jump on me." Ernest told Foley that no one was going to jump on him and Foley left.

Frank, Ernest, Woodhouse and Bell then went to Boyd's Lounge on 47th Street. They were outside when a car pulled up and Frank saw Steve Foley, Ike Kitchen, "Rough Rider" (Larry Martin) and a few other people jump out of it. They met Carlos and five or six more persons and proceeded toward Frank. Steve Foley said, "There he is, right there." About fifteen or sixteen people were there at that point. "Rough Rider" hit Frank in the jaw and said, "I done told you to stay out of Stone business and also Poncho." "Rough Rider" then hit Frank again. Frank saw Ike Kitchen standing in the crowd and said, "Ike, tell your people to leave me alone." Ike said, "No, sir, I can't do nothing because this is a Stone thing." Somebody grabbed Frank and said, "We'll get this thing over with now." Then Carlos Olivier started shooting at him, hitting him four times in the left leg and buttocks.

Frank Mitchell was asked whether he was familiar with an organization known as the "Blackstone Rangers". An objection made to this question was overruled and a motion to declare a mistrial was denied. Frank testified, over objections, that he had formerly been a member of that organization. He had seen Martin, Dameron, Kitchen and Foley at meet-

ings and had seen Dameron, Kitchen, Foley and Olivier give the Stone handshake or signal. He said that Kitchen was an ambassador in the Rangers. In overruling the defense's objections, the trial judge commented, "It proves that when one of the defendants said 'This is a Stone thing' that they were acting in concert."

Yvonne Scott, a girl friend of Frank Mitchell, testified that on February 1, 1969, she was in a tavern when Ike Kitchen and Paul Martin came in. She overheard Martin tell Kitchen, "Don't kill him. Just give him something to think about." Kitchen told her they were trying to straighten out whether Frank was going to press charges against Poncho.

■■ In *People v. Hairston*, 46 Ill.2d 348, 372, 263 N.E.2d 840, 854, the trial court admitted evidence of defendant's membership in the "Blackstone Rangers". The Supreme Court affirmed, stating that "* * * proof of membership is admissible only if there is also sufficient proof to show that membership is related to the crime charged, for example, to show common design or purpose. * * * Where the circumstances show there is a common design to do an unlawful act to which all assent, whatever is done in furtherance of the design is the act of all." (Citing *People v. Cole*, 30 Ill.2d 375, 196 N.E.2d 691.) In the case at bar, the defendants were tried on charges of aggravated battery, conspiracy to commit aggravated battery and other enumerated charges. It seems clear to us that the evidence, if believed by the jury, was sufficient to permit a reasonable inference that the defendants, as gang members, were engaged in a common design and purpose and that therefore testimony regarding the "Blackstone Rangers" was properly admitted into evidence.

It is next contended that the defendant, Kitchen, was deprived of a fair trial because of a reference to an arrest. The record shows that the defendants, Larry Martin, Foley and Kitchen, testified in their own defense. They denied committing the crimes and being members of the "Blackstone Rangers". In rebuttal, Detective Sidney Clark testified over objections that he was assigned to the gang intelligence unit to investigate crimes committed primarily by gangs. He explained that the Black P. Stone Nation organization is also referred to as the "Blackstone Rangers" or the "Stones". Detective Clark had seen all four of the defendants at the organization's meetings and had also seen them wear the red berets customarily worn by members. He identified Kitchen as an ambassador whose duty was to keep the neighborhood organized and in line.

■■■ Detective Clark was asked whether Kitchen had ever spoken to him in connection with the organization. Objection was made that no foundation had been laid for this question. When asked to pinpoint the date of the conversation, the officer stated "around April of '68. It may

or may not have been that month. I can refer to an arrest that was—." Defense counsel, in chambers, moved for a mistrial because the witness had stated "I can refer to an arrest." The trial judge commented that there was no indication as to who was arrested. The court denied the motion for a mistrial, but struck the testimony and instructed the jury to disregard it. It is our opinion, that the error, if any, could not reasonably have affected the result of the trial. It is not the policy of this court to reverse a judgment merely because error has been committed unless it appears that real justice has been denied or that the finding of guilty may have resulted from such error. *People v. Morehead,* 45 Ill.2d 326, 259 N.E.2d 8; *People v. Helm,* 40 Ill.2d 39, 237 N.E.2d 433.

*People v. Gregory,* 22 Ill.2d 601, 177 N.E.2d 120, cited by defendants, is inapplicable on the facts. There, the Supreme Court held that a reference to prior crimes in the body of a signed written confession, together with improper remarks by the prosecutor during closing argument, denied defendants the fair and impartial trial to which they were entitled.

■■■ Defendants also contend that the State did not prove defendants Kitchen and Foley responsible or accountable for the acts of Olivier since the evidence cannot be said to show "aiding or abetting" or a "common plan". It is argued that mere presence at the scene of a crime does not amount to aiding or abetting. (*People v. Ramirez,* 93 Ill.App.2d 404, 236 N.E.2d 284.) We have already stated that the evidence, if believed by the jury, demonstrated that these defendants, along with Olivier, were engaged in a conspiracy to commit aggravated battery. When a conspiracy is entered into, each conspirator then becomes liable for the acts of his co-conspirators done in furtherance of the objects of the conspiracy. *People v. McQuire,* 29 Ill.App.2d 117, 172 N.E.2d 523.

■■ The defendant, Olivier, claims that the prosecution's remarks, in closing argument, were so prejudicial as to deny him a fair trial. The comment complained of was as follows:

"And they (Kitchen and Foley) just happened to walk away. That's what they are trying to do here, walk away and leave poor old Carlos holding the bag."

In substance, it is argued that this comment was a personal view of defendant's guilt and that it highlighted the fact that Olivier had not chosen to take the stand. The record reveals that no objection was made to this statement. We can understand why. The remark was perfectly proper. There is not even a fleeting reference to the fact that Olivier did not testify. We have examined the cases cited by the defense and find that they are inapplicable on the facts to the case at bar.

■■ Olivier further contends that the sentences given to him were excessive. The trial court sentenced him to seven to ten years on indictment 69-1113 and seven to fifteen years on indictment 69-1114, the sentences to run concurrently. The court conducted a full hearing in aggravation and mitigation and imposed sentences which were within the statutory limits for the convictions, (Ill. Rev. Stat. 1969, ch. 38, pars. 8—4, 12—4). We cannot say that the sentences given to Olivier constitute a great departure from the spirit and purpose of the fundamental law and disproportionate to the offenses. *People v. Smith,* 14 Ill.2d 95, 150 N.E.2d 815.

The judgment of the Circuit Court is therefore affirmed.

Judgment affirmed.

DIERINGER, P. J., and ADESKO, J., concur.