THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ADRIAN GREEN, Defendant-Appellant.

First District (2nd Division)   No. 61153

Opinion filed October 12, 1976.

James J. Doherty, Public Defender, of Chicago (Lance R. Miner and Marilyn D. Israel, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Michael E. Shabat, and Marc S. Tobias, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE HAYES delivered the opinion of the court:

Adrian Green (hereinafter defendant) was charged in a single indictment with three counts of murder of Andrew Mitchell (Ill. Rev. Stat. 1971, ch. 38, pars. 9—1(a)(1), 9—1(a)(2), and 9—1(a)(3)) and one count of attempt armed robbery of Andrew Mitchell (Ill. Rev. Stat. 1971, ch. 38, pars. 8—4 and 18—2). A jury trial resulted in a verdict of not guilty on the murder charges and guilty on the attempt armed robbery charge. Judgment was entered on the verdict and defendant was sentenced to three years and four months to ten years in the Illinois State Penitentiary. On appeal, defendant makes the following contentions: (1) defendant's motion for discharge should have been granted because the trial judge erroneously allowed a 60-day extension of the statutory term for trying

defendant; (2) defendant was erroneously denied the right to a hearing on an oral motion to suppress identification testimony; (3) the State's failure to comply with discovery rules requires reversal of defendant's conviction; and (4) the State failed to prove defendant guilty beyond a reasonable doubt.

One Clinton Matthews testified that, on 2 April 1972 at approximately 3 a.m., he and Andrew Mitchell, now deceased, left an establishment called Turner's Blue Lounge located at 40th Street and Indiana Avenue in Chicago. They were walking south on the west side of the street when three men unexpectedly came out of a building entrance and walked past them. Matthews became apprehensive and placed a pocket knife in his hand. A single man, not one of the three who came out of the entrance, ran across the street from the east side towards Matthews and Mitchell. The man approached them with a pistol drawn and pointed at them, and said, "it's a stick-up" and "drop your knife." On cross-examination, it was brought out that before the grand jury Matthews had testified only that the man said "drop your knife."

The area was sufficiently illuminated by street lights to give Matthews a clear view of the man. Matthews observed the assailant, at close proximity, for about 30 seconds. He described the man as between 5'10" and 6', about 150 pounds, brown skin, wearing a coat which reached below his knees and a turned down hat. Over objection, the man was identified by Matthews, in court, as the defendant. Hence, Matthews, as an eyewitness, identified defendant as the person who committed the attempt armed robbery.

When defendant turned his head to see if anyone was around, Matthews ran south in the direction of 43rd Street, leaving Mitchell and defendant behind. When he was between 42nd and 43rd Streets, Matthews heard a shot fired. When he arrived at an establishment on 43rd Street called the Music Box Lounge, Matthews attempted to call the police. However, the phone there was not working and he did not in fact contact the police until two days later. Matthews' explanation for the delay was that he was frightened because he did not know "what kind of friends [defendant] might have."

Although Matthews could not testify as to the results of the shot which he had merely heard, several other witnesses did. Ollie Thomas, a Chicago police officer, testified he was off-duty, driving north on Indiana in his own car, when he stopped for a traffic light at 41st Street. There he observed four men running east on 41st Street. One was wearing a trench coat. He was, however, too far away to make an identification. When Thomas pulled away from the light, still going north on Indiana, he saw a man staggering in the center of the street. The man was subsequently identified as Mitchell. Thomas brought his vehicle to a stop. Mitchell

collapsed and Thomas pulled him off to the side of the street so that he would not be run over by passing traffic.

Another witness, Donald Larrue, testified he was with defendant and three other friends at 41st Street and Indiana on 2 April 1972, at about 2:30 a.m., having come from a party with them. Larrue left the group on the northeast corner of the intersection and walked north, on the east side of Indiana, towards a restaurant at 40th Street. As he approached the restaurant, he heard a shot behind him. Larrue turned and observed a man stagger across the street. Larrue further observed another man drag him between two cars.

John Johnson was the only witness who testified that he saw the shooting. At the time of the incident, Johnson was walking south on Indiana Avenue from 40th Street to 41st Street. He saw three men near 41st Street, about 40 to 45 feet away from him. One man was holding a gun. Johnson recognized this man as defendant, whom Johnson had known for four years. One of the men, not defendant, ran south toward 41st Street. Johnson heard a shot and observed a flash from defendant's gun. After the shot was fired, defendant ran east on 41st Street.

Defendant was arrested that same morning in the apartment of one Margaret Kuykendall. A gun recovered in the apartment was later identified as the source of the bullet which caused Mitchell's death.

OPINION

I.

Defendant's first contention on this appeal is that his motion for discharge should have been granted because the trial court erroneously extended the statutory term for trying defendant. This contention is predicated on two subcontentions: (1) no sworn testimony was introduced by the State in support of certain allegations contained in its petition for extension, which allegations had been specifically denied by defendant; and (2) the informal evidence brought to the trial court's attention was insufficient to sustain the State's burden of proving those allegations.

The pertinent statute is section 103—5 of the Code of Criminal Procedure (Ill. Rev. Stat. 1973, ch. 38, par. 103—5), commonly referred to as the Fourth Term Act. It provides in part as follows:

"(a) Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant * * *

\* \* \*

(c) If the court determines that the State has exercised without success due diligence to obtain evidence material to the case and

that there are reasonable grounds to believe that such evidence may be obtained at a later day the court may continue the cause on application of the State for not more than an additional 60 days."

Resolution of defendant's contention requires a detailed examination of the circumstances relating to the State's petition for extension. Defendant was arrested on 2 April 1972 and held without bond in the Cook County Jail until his trial on 11 December 1973. Continuances were granted either on motion of, or by agreement of, defendant on 14 July 1972, 18 July 1972, 27 July 1972, 11 August 1972, 16 August 1972, 31 August 1972, 22 September 1972, 13 October 1972, 4 December 1972, 2 February 1973, 15 March 1973, 30 April 1973, 9 May 1973, 18 May 1973, and 21 May 1973. This last continuance was to 20 June 1973. All subsequent continuances were on order of the court or on motion of the State. These were obtained on 20 June 1973, 23 July 1973, 27 August 1973, 10 September 1973, and 9 October 1973.

On 16 October 1973, two days prior to expiration of the term, the State presented its "Petition For An Extension of Time Under the 4th Term Act." The allegations of the petition were as follows:

"1. That a material and essential witness in the above entitled and numbered indictment is one Dale Kuykendall of 4120 South Prairie, Chicago Illinois.

2. That a material and essential witness in the above entitled and numbered indictment is Margaret Kuykendall of 4120 South Prairie, Chicago, Illinois.

3. That the State's Attorney of Cook County has exercised due diligence to produce the presence of this witness [sic], Dale and Margaret Kuykendall, before this Honorable Court on 9 October 1973, on which date the above captioned cause was set for trial.

4. That since April 18, 1973, several attempts have been made to locate the above material witnesses but at the present time he [sic] cannot be located by the State's Attorney of Cook County.

5. That there is reasonable ground to believe that the presence of the witness, Dale Kuykendall, may be procured at a later date."

The petition concluded with a prayer for a 60-day extension of the time within which defendant must be brought to trial under the Fourth Term Act.

At a hearing on the State's petition, defendant orally denied the allegations contained in paragraphs 3, 4, and 5, and denied that due diligence had been exercised to produce the witnesses. The trial judge, on his own initiative, questioned a police investigator who was present in the courtroom. The investigator, without being sworn in, informed the judge that a number of efforts had been made to locate the witnesses, but that these efforts had been unsuccessful. However, the investigator stated that

he believed the witnesses could be located, if an extension were granted, through interviews with a relative who had previously been reluctant to cooperate. The Assistant State's Attorney also represented to the judge that the Departments of Public Aid and of Social Security were aiding in the investigation; that reports had been received to the effect that the Kuykendalls were in the area; and that, given more time, a person who had been reluctant to disclose their whereabouts may come forward with the information needed. The investigator then told the judge that in his experience these were reasonable assertions.

The above colloquy was carried on over defense objection that these were mere statements, not sworn testimony. The judge asked the State if it had anything further. The State responded that it did not. A similar inquiry was made to defendant, and defendant responded that he had nothing further. The petition for a 60-day extension of the Fourth Term Act was then allowed.

■■ A decision to allow an extension of the statutory term in order to secure material evidence is within the discretion of the trial court, and its determination will not be reversed unless there is an abuse of discretion. (*People v. Arndt* (1972), 50 Ill. 2d 390, 280 N.E.2d 230.) The precise issue presented (namely, whether it is a reasonable exercise of discretion to grant an extension without a formal hearing, including sworn testimony, when defendant specifically denies allegations of supporting facts in the State's petition for extension) is one of first impression in Illinois.

Defendant's contention of an abuse of discretion is founded on dictum in our opinion in *People v. Bey* (1973), 12 Ill. App. 3d 256, 298 N.E.2d 184. *Bey* held that, unless a defendant specifically denies and puts at issue supporting allegations of fact contained in the State's petition for extension, the State need not present evidence in support of its petition. Defendant in that case had made only a general objection to the extension, complaining that it was a dilatory tactic. The absence of evidence to support the allegations of fact in the State's petition for extension of the statutory term was held not to require reversal of the resulting conviction. (See *People v. Glanton* (1975), 33 Ill. App. 3d 124, 338 N.E.2d 30; *People v. Moore* (1975), 27 Ill. App. 3d 337, 326 N.E.2d 420; *People v. Gamble* (1976), 41 Ill. App. 3d 394, 353 N.E.2d 136.) We further stated in *Bey* that, "should defendant by specific denial put those allegations of fact at issue, then the State must present evidence in support of those allegations." (12 Ill. App. 3d 256, 261.) Defendant in the instant case orally specifically denied certain supporting allegations, and, thus, put those allegations at issue. The question now becomes what was meant in *Bey* by the presentation of evidence?

The State argues that *Bey* envisioned a presentation of evidence in an informal fashion, not a proceeding with submission of proof and cross-

examination. In a pre-*Bey* case, *People v. Morris* (1971), 1 Ill. App. 3d 566, 568, 274 N.E.2d 898, 900, it was stated that "[n]either the statute nor case law require that the trial court conduct an evidentiary hearing before granting or denying a prosecution request for an extension of time." However, *Morris* is distinguishable from the instant case. That opinion says an extension of time was granted "over defendant's objection." We must assume this was a general objection; hence, even under defendant's interpretation of *Bey,* an evidentiary hearing was not required.

*People v. Canada* (1967), 81 Ill. App. 2d 220, 225 N.E.2d 639, and *People v. Moriarity* (1966), 33 Ill. 2d 606, 213 N.E.2d 516, also cited by the State, are of no aid to this discussion. Those cases construed the predecessor to section 103—5(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 103—5(c)), which provided that the court need only be "satisfied that due exertion has been made to procure the evidence on the part of the People, and that there is reasonable grounds to believe that such evidence may be procured at a later day * * *." (Ill. Rev. Stat. 1959, ch. 38, par. 748.) The present statute requires that the court make a determination, which implies a finding of fact supported by evidence in the record. (*People v. Bey.*) Thus, the present statute demands a more formal procedure than was necessary under the former statute.

■■ The right to a speedy trial, as guaranteed by the Sixth Amendment to the United States Constitution, is a fundamental right enforceable against the States through the Fourteenth Amendment. (*Klopfer v. North Carolina* (1967), 386 U.S. 213, 18 L. Ed. 2d 1, 87 S. Ct. 988.) The Fourth Term Act is the statutory implementation of this constitutional right. (*People v. Love* (1968), 39 Ill. 2d 436, 235 N.E.2d 819.) The purpose of the constitutional provision and the statute "is to prevent a defendant from being kept in jail at the whim of a prosecutor without having him tried on a pending indictment or information." (*People v. Lowe* (1965), 61 Ill. App. 2d 262, 267, 210 N.E.2d 31, 34.) A hearing on a petition for extension need only be such a hearing as is necessary to fulfill the purpose of the statute. We hold that the procedure employed in the instant case met this test. Although it is a better practice to swear in all witnesses, such swearing-in is not essential to insure an accused's right to speedy trial. However, it is essential that a defendant be given notice of the hearing and an opportunity to cross-examine all witnesses testifying against him and an opportunity to present evidence in support of his specific denial or denials. The police investigator was presumably still available in court for cross-examination, had defendant requested it, because, not only was he present in court for his direct testimony, but also after the Assistant State's Attorney had made his final further representations as to the likelihood that, given the extended

time, the presence of at least Dale Kuykendall could be procured, the investigator told the court that those representations were reasonable. If the State had relied solely on the representations of the prosecutor, or on a witness who was unavailable for cross-examination, it would have been an abuse of discretion to grant the extension. To allow an extension based on such flimsy proof would open the door to delays for dilatory reasons or at the whim of the prosecutor. We note further that defendant, despite the opportunity expressly extended to him by the court, had nothing further to offer in support of his specific denial of certain of the allegations of fact in the State's petition.

■■ We further hold that the unsworn testimony presented at the hearing was sufficient to sustain the State's burden of proving the allegations at issue. The representations of the police investigator indicated that repeated efforts had been made to locate the two witnesses. Although as yet unsuccessful, the police had reasonable ground to believe they could find the witnesses soon through interviews with a previously uncooperative acquaintance.

■■ This was not a situation where only belated efforts were made to locate witnesses. (See *People v. Shannon* (1975), 34 Ill. App. 3d 185, 340 N.E.2d 129.) The petition alleged that, as early as 18 April 1973 (almost seven months before expiration of the term), action was taken to secure the witnesses for the trial. It is irrelevant that the witnesses failed to appear at the trial. The exercise of discretion must be tested by the circumstances prevailing at the time the petition was considered. (*People v. Poland* (1961), 22 Ill. 2d 175, 174 N.E.2d 804.) The testimony presented at the hearing reflected that due diligence had been exercised to find the witnesses. We conclude that the extension of time was a reasonable exercise of the trial judge's discretion. *People v. Moore; People v. Stephens* (1973), 13 Ill. App. 3d 642, 301 N.E.2d 89.

## II.

Defendant next contends that he was erroneously denied the right to a hearing on his oral motion, made for the first time during the trial, to suppress the in-court identification made of him by the State's witness, Clinton Matthews, as the person who had pointed a gun at the victim Mitchell and himself while announcing a "stickup."

To relate relevant facts in greater detail, Matthews was testifying on direct examination as a witness for the State. He had related the circumstances of the street confrontation between Mitchell and himself and a person (whom he described) who had approached the two, armed with a handgun pointed at them, and had announced a "stickup." At that point, the prosecutor asked Matthews whether there was anyone then in the courtroom whom Matthews could identify as the man who had

pointed the pistol at them. Defense counsel immediately objected, made an oral motion to suppress any in-court identification of defendant by Matthews, and requested an immediate hearing on his motion. No pretrial motion to suppress identification testimony had been made, and no grounds for the instant motion were advanced. The request for an immediate hearing was denied without any assigned reason; the motion was denied without a hearing; and Matthews thereupon identified defendant as the person involved.

As noted, the trial court did not expressly assign any reason for denying defendant a hearing on his oral motion. In the search for possible reasons, we are referred to section 114—12 of the Code of Criminal Procedure (Ill. Rev. Stat. 1971, ch. 38, par. 114—12). Although this statutory provision is expressly applicable to motions to suppress evidence illegally seized, it has also been applied to motions to suppress identification testimony, including eyewitness identification testimony. (See, for example, *People v. Bracy* (1973), 14 Ill. App. 3d 495, 302 N.E.2d 747.) Adapting the statutory provision to a motion to suppress identification testimony, subparagraph (b) of section 114—12 provides that the motion to suppress shall be in writing and shall state facts showing why the identification testimony should be suppressed. Again as noted, the instant motion to suppress was oral and stated no grounds for suppression. But it has been held that the motion may be oral. (*People v. Canale* (1972), 52 Ill. 2d 107, 285 N.E.2d 133.) And defendant contends that the alleged ground for suppression appeared in the subsequent cross-examination of Matthews (which it did) so that, on defendant's oral motion for a mistrial made the day after Matthews' cross-examination had been concluded, the trial court should have reconsidered its denial, suspended the trial, and held the hearing. Instead, the trial court denied the motion for a mistrial on the ground that no basis for the motion had been alleged. In order to reach the merits of the motion, we assume without deciding that this subsequent development sufficiently complied with the requirement that the motion state facts showing why the identification testimony should be suppressed.

Subparagraph (c) of section 114—12 requires that the motion be made before trial "unless opportunity therefor did not exist * * *." We have concluded that, in the instant case owing to the fault of the State, opportunity to make the motion before trial did not exist and the motion was otherwise timely. Somewhat confusingly, the explanation of why we think the pretrial opportunity did not exist involves a matter which defendant has made the basis for his next and third independent contention that the trial court committed reversible error. Hence, in explaining why we think that the pretrial opportunity did not exist, we cannot avoid anticipating the factual basis for defendant's next and third contention.

■■ As Paragraph 11 of a pretrial motion for discovery, defendant requested that the State provide the names and addresses of the witnesses whom the State intended to call at trial for the identification of defendant as the perpetrator of the crime, including the following:

"a) time, date and place of identification confrontation;

b) if photographic identification was used, production of any photos used, whether of defendant or of other persons;

c) all persons present at such viewing;

d) any pictures taken of lineup, etc.;

e) names of any individuals who confronted the accused and made an identification or identified him for other crimes."

The State's sole response was that "[t]here was no photographic or line up identification made to the knowledge of the State." Hence, the State's response was limited to photographic and lineup identifications, even though, in our opinion, subparagraph (a) and possibly subparagraph (e) apply as well to eyewitness confrontation. While defendant had to know that the State must somehow identify defendant and that, in the absence of photographic and lineup identification, the only other method of identification available was identification by an occurrence witness, defendant was not informed as to which of the numerous possible trial witnesses listed by the State elsewhere in its response would be the occurrence witness relied on. It follows that defendant had no opportunity to file a pretrial motion to suppress the in-court identification testimony of any *specific* possible trial witness. Defense counsel first became aware that Matthews was that witness when the prosecutor asked Matthews whether there was anyone then in the courtroom whom Matthews could identify. Defense counsel immediately objected, made her oral motion to suppress, and requested an immediate hearing on her motion. Under these circumstances, we conclude that defendant had had no opportunity to make a pretrial motion and that his trial motion was otherwise timely.

■■ For the above reasons, we conclude further that defendant had a right to an immediate hearing on his motion to suppress the identification testimony of Matthews (see *People v. Robinson* (1970), 46 Ill. 2d 229, 263 N.E.2d 57), and that it was error for the trial court to deny the said hearing.

However, that error has been held to be harmless error where the record clearly establishes that there was no valid basis for the suppression of the in-court identification. (*People v. Miller* (1975), 31 Ill. App. 3d 115, 333 N.E.2d 264; *People v. Bentley* (1973), 11 Ill. App. 3d 686, 297 N.E.2d 282.) We think that is the case here.

The ground for the motion to suppress which appeared during the cross-examination of Matthews was that Matthews had been in court

during several pretrial hearings at which he had seen defendant "seven or eight times" while defendant was participating in the hearing as the accused. On these occasions, Matthews had never been asked to identify defendant. The thrust of the contention is that these viewings of defendant by Matthews amounted to "showups" (that is, one-on-one identification procedures), which, when arranged by the State, have been held impermissibly suggestive and conducive to identification (*Stovall v. Denno* (1967), 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967; *People v. Blumenshine* (1969), 42 Ill. 2d 508, 250 N.E.2d 152), and that these "showup" viewings tainted the in-court identification so as to render it inadmissible (*People v. Dennis* (1970), 47 Ill. 2d 120, 265 N.E.2d 385, *cert. denied*, 403 U.S. 907).

We observe first that, on a motion by defendant to suppress an in-court identification, the burden of proof is on defendant to establish that the challenged identification is the result of State procedures so suggestive as to give rise to a substantial likelihood of irreparable misidentification. (*People v. Johnson* (1970), 45 Ill. 2d 38, 257 N.E.2d 3.) But the instant cross-examination of Matthews did not establish that the State had arranged for the presence of Matthews at the pretrial hearings, nor did the State involve Matthews in any way at those hearings. Absent evidence of design by the State or of State involvement in Matthews' presence, we think that defendant did not sustain his burden.

In any event, however, the testimony of Matthews on direct examination clearly disclosed a prior independent origin for his in-court identification of defendant. And our Supreme Court has held that "the existence of an independent origin will validate an in-court identification even though a previous identification procedure may have been impermissibly suggestive." (*People v. Connolly* (1973), 55 Ill. 2d 421, 427, 303 N.E.2d 409, 412.) On direct examination, Matthews testified that, for about 30 seconds, he was face-to-face and in close proximity with the person who had approached Mitchell and himself and had pointed a handgun at them while announcing a "stickup." The street was well illuminated, and the witness gave a detailed description of the armed person. In *People v. Hudson* (1970), 46 Ill. 2d 177, 189, 263 N.E.2d 473, 480, a similar 30-second eyewitness viewing was held sufficient to establish a prior independent origin for an in-court identification. The Supreme Court stated:

> "When it is considered that he was the witness to a violent crime and that he was confronted by a person armed with a deadly weapon it seems apparent that he had adequate opportunity and reason to recall the appearance of the murderer."

■■ We conclude that, since, under the instant circumstances, the record clearly establishes that the in-court identification could not be

properly suppressed because it had a prior origin independent of the so-called "showups," the error of the trial court in denying defendant a hearing on his oral motion to suppress the in-court identification by Matthews was harmless error. *People v. Miller; People v. Bentley.*

### III.

As already noted, defendant's third contention is that his conviction must be reversed because of the State's failure fully to comply with the discovery requirements of Supreme Court Rule 412. We have already held herein that the State's response to Paragraph 11 of defendant's discovery motion was incomplete and operated to deprive defendant of the opportunity to file a *pretrial* motion to suppress the identification testimony of Matthews, with the result that defendant's otherwise timely oral motion to suppress that testimony, made during the trial, was proper and should have received the requested immediate hearing; but that the denial of the hearing was harmless error which did not prejudice defendant because the record clearly discloses that, owing to a prior independent origin, the in-court identification could not properly have been suppressed.

Addressing ourselves to the instant contention, we think that defendant has not shown that he was prejudiced in any way by the incomplete disclosure of the State. He did not seek to suppress the in-court identification by Matthews on this ground of incomplete disclosure, as he might have done under the provisions of Supreme Court Rule 415(g). He did not seek a fuller disclosure by the State, though he had to know that the only means of identification available to the State, in the absence of photographic or lineup identification, was eyewitness identification. He has not suggested any respect in which the incomplete disclosure prejudiced him by suggesting any advantageous use which he might have made of the knowledge that Matthews would be an identification witness. To the extent to which the incomplete disclosure denied him the opportunity to file a pretrial motion to suppress any in-court identification by Matthews, we have held herein that his oral motion made during trial was proper and otherwise timely and should have been heard, but that the failure to hear it was not prejudicial because the record clearly discloses that the in-court identification by Matthews could not properly be suppressed; hence, he was not prejudiced in that respect. We assume that defendant's acquittal of the charges of murder explains why no similar contention has been made in respect of the in-court identification of defendant by John Johnson as the person who fired a gun at Mitchell, even though that identification tended to corroborate Matthews' identification of defendant as the person who attempted the armed robbery of Mitchell.

■■ We conclude that the incomplete disclosure by the State, while we do not condone it, cannot be made the basis for a reversal of defendant's conviction where no showing has been made that defendant was prejudiced thereby. (See *People v. Anderson* (1971), 48 Ill. 2d 488, 499, 500, 272 N.E.2d 18, 25.) And the hard fact remains that defendant never sought in the trial court to suppress the in-court identification by Matthews as a sanction for the incomplete disclosure by the State, so that that issue is not before us for review.

## IV.

Defendant's final contention is that he was not proved guilty beyond a reasonable doubt. Specifically, he contends that his in-court identification by Matthews as the attempt armed robber of Mitchell was inadequate to support his conviction of the attempt armed robbery of Mitchell because Matthews' opportunity to observe the assailant at the scene was inadequate to support Matthews' positive identification of defendant as that assailant, and because, despite ample opportunities, Matthews never publicly identified defendant prior to the in-court identification during trial. In addition, defendant contends that, under the circumstances, Matthews' in-court identification was inherently incredible.

■■ It is true, of course, that a conviction which rests upon vague, uncertain and doubtful identification testimony must be reversed. (*People v. Cullotta* (1965), 32 Ill. 2d 502, 207 N.E.2d 444.) But, as we have indicated above, we do not think that Matthews' eyewitness in-court identification was vague or uncertain or doubtful. The 30-second face-to-face confrontation at close proximity on a well illuminated street was a sufficient basis for the positive identification. (*People v. Hudson.*) It enabled Matthews to give a detailed description of the assailant. The cross-examination of Matthews did not shake his positive identification.

The fact that Matthews did not contact the police to report the incident and to describe the assailant until two days after the incident was explained by Matthews to have been the result of the telephone's (in the 43rd street tavern) being out of order on the night of the incident and of his subsequent fear as to "what kind of friends [defendant] might have." The fact that, despite ample opportunities at the several pre-trial hearings, Matthews never identified defendant prior to the trial was explained, at least in part, by the fact that he was never asked to identify defendant at any of those pretrial hearings. We think that these two facts, as well as the 20-month lapse of time between the date of the incident and the date of trial, and the minor impeachment of Matthews on cross-examination, pertained to Matthews' credibility and to the weight to be given to his identification testimony. (*People v. Hudson* (1972), 5 Ill. App. 3d 686, 284 N.E. 2d 33.) The sufficiency of the identification testimony is a

question of fact for the jury, and the jury's determination will not be disturbed on review unless the testimony is so unsatisfactory as to leave a reasonable doubt of an accused's guilt. *People v. Williams* (1972), 52 Ill. 2d 455, 288 N.E.2d 406.

We are impressed by the congruity and corroborative nature of other testimony at the trial.

Officer Thomas, driving north on Indiana Avenue, stopped for a traffic light at 41st Street. He saw four men running east on 41st Street, one of whom was wearing a trench coat; Matthews described the assailant as wearing a coat which reached below his knees. When Officer Thomas continued driving north on Indiana Avenue, he saw a man (later identified as Mitchell) staggering in the center of the street; the incident here in question occurred, according to Matthews, on the west side of Indiana Avenue between 40th and 41st Streets. Officer Thomas stopped his car; Mitchell collapsed in the street, and Thomas pulled him to the side of the street so that he would not be run over by passing traffic.

Donald Larrue testified that, at about 2:30 a.m. on 2 April 1972, he was with defendant and three other friends on the northeast corner of 41st Street and Indiana Avenue; they had all come from a party. Matthews testified that the assailant came toward Mitchell and himself from the east side of Indiana Avenue, crossing the street. Larrue left the other four and walked north on the east side of Indiana Avenue toward a restaurant at 40th Street. As he approached the restaurant, he heard a shot behind him, turned around, saw a man stagger across Indiana Avenue, and saw another man drag the staggering man between two cars. Collating this testimony with that of Officer Thomas, Larrue saw Mitchell staggering across Indiana Avenue immediately after Larrue had heard the shot, and also saw Officer Thomas pull Mitchell to the side of Indiana Avenue. Larrue's testimony clearly places defendant on the scene at the approximate time of the incident (as testified to by Matthews) and in the company of three other persons; and, just before Officer Thomas saw Mitchell staggering in the street, Thomas saw four men running east on 41st Street away from Indiana Avenue.

On the date and at the time of the incident, John Johnson was walking south on Indiana Avenue from 40th Street toward 41st Street. When he was about 40 to 45 feet away from them, he saw three men near 41st Street. One man was holding a gun, and Johnson identified that man as defendant, whom Johnson had known for four years. One of the three men, not defendant, ran south toward 41st Street. Johnson then heard a shot and saw a flash from the gun which defendant was holding. After the shot was fired, Johnson saw defendant run east on 41st Street. The inference is clear that the three men whom Johnson saw were Mitchell, Matthews, and the man holding the gun, whom Johnson identified as

defendant. We know by Matthews' testimony that he was the man who ran away toward 41st Street. Mitchell was the victim.

Defendant points out that, since the jury acquitted him of the murder charges, the jury must not have believed Johnson's identification testimony. However, to the extent to which Johnson's identification testimony tended to corroborate Matthews' in-court identification of defendant as the attempt armed robber of Mitchell, the jury may have believed Johnson's testimony. A jury is entitled to believe one portion of a witness' testimony and disregard another portion. *People v. Smith* (1972), 7 Ill. App. 3d 912, 288 N.E.2d 901.

Finally, defendant was arrested later that same morning in the apartment of one Margaret Kuykendall, and the fatal gun was discovered in that apartment.

■■ The positive identification of defendant by Matthews who had adequate opportunity therefor, supported by the congruent and corroborative total testimony of the State's several witnesses at the trial, leaves no room for any reasonable doubt as a matter of law as to the sufficiency of the identification testimony. Finally, a positive identification by one witness who has adequate opportunity for observation will support a conviction, even when that identification testimony is contradicted by the accused. *People v. Clark* (1972), 52 Ill. 2d 374, 288 N.E.2d 363.

For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Affirmed.

STAMOS, P. J., and JIGANTI, J., concur.