THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LARRY HAYNES *et al.*, Defendants-Appellants.

First District (3rd Division)    No. 62801

Opinion filed June 28, 1978.

James J. Doherty, Public Defender, of Chicago (William F. Krahl, Jr., and Gail A. Moreland, Assistant Public Defenders, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Kenneth T. McCurry, Assistant State's Attorneys, of counsel), for the People.

· Miss JUSTICE McGILLICUDDY delivered the opinion of the court:

Following a jury trial the defendants, Larry Haynes, James Harris and Rodney West were convicted of the offenses of murder and armed robbery. Each defendant was sentenced to a term of 20 to 40 years in the penitentiary for the murder conviction. They were not sentenced for the armed robbery. The defendants appeal, claiming that a new trial is warranted due to certain prejudicial statements which were made by two witnesses in front of the jury.

The evidence shows that, at approximately 12:30 a.m. on August 20, 1972, Dennis Nelson was shot and killed at the residence of Audrey Anna Thomas, 1106 West 110th Street in Chicago. The deceased was on leave from the Marines and was staying with his brother, Herbert Nelson, who lived next door to Thomas.

The shooting took place during a party at the Thomas home. The party had begun at approximately 9 p.m. on the preceding evening and was attended by 15 to 20 people. Herbert testified that, at approximately 12:30 a.m. on the 20th of August, he and his brother passed the Thomas home. Through an open door they saw five or six people standing in a line with their hands in the air. Herbert stated that he went to his home to call the police. When Herbert arrived at his door, he heard a number of shots coming from the direction of the Thomas residence. He told his wife to call the police and as he started to go back to the Thomas home he observed two individuals running from that house. He identified one of the individuals as James Harris but did not recognize the other person. When Herbert arrived at the Thomas residence, he found his brother lying on the grass, bleeding from the chest.

Seven witnesses from the State testified as to the events which preceded the shooting—Audrey Anna Thomas, Philander Walton, Sylvia Cain, Malzina Phillips, Earl Williams, Sam Edwards and Bondian Edwards. The testimony of all these witnesses was essentially the same. At approximately 12:30 a.m., during a poker game at the Thomas residence, West, who was among the individuals seated around the table, suddenly stood up and said something to the effect of "Pass the hat." Almost immediately, Harris and Haynes burst through the door of the Thomas home, pushing Earl Williams, one of the party guests, into the house with them. Harris entered carrying a pistol while Haynes had a rifle. While Haynes covered the guests, Harris searched the upstairs and the basement areas of the home, coming back with another man whom Harris brought into the room at gunpoint. West then forced Philander Walton against the wall and searched him. West took a pistol, some keys and a wallet from

Walton and then pointed the pistol at Walton's head. Walton thereupon fell to the floor.

At that time, Dennis Nelson came through the front door. He had a gun in his hand and said something to the effect of "What is going on?" Haynes then shot Dennis once and Harris shot him twice. West scooped up the money remaining on the card table and the three men fled.

The witnesses also testified to their identification of the defendants at lineups held on the day following the incident. West participated in one lineup and Harris and Haynes participated in another. Walton, Phillips, Williams and Sam Edwards identified Harris and Haynes, while Walton, Thomas, Cain and Sam Edwards identified West. Thomas also testified that she identified Haynes and Harris at the police station, outside of a lineup. Bondian Edwards had failed to pick Haynes out of the lineup.

On appeal, the defendants rely upon allegedly prejudicial statements by witnesses as grounds for a new trial. First, Harris contends that his defense was severely prejudiced when a police officer testified that Harris had refused to make a statement following Harris' arrest. Second, all of the defendants assert that they were prejudiced by the voluntary statement by Phillips that she had lost a child.

The issue concerning the disclosure of Harris' refusal to make a statement arose during the testimony of Officer Hugh Balletto of the Chicago Police Department, who testified for the State. He related that Harris voluntarily came to the police station on the day following the occurrence and he was taken into custody. The record then shows that Balletto made the following statements:

> "* * * I then brought [Harris] into the 6th District Station and then advised him of his constitutional rights and then after ascertaining he understood those rights I then asked him if he wished to make a statement in regards to this matter and he stated he * * *."

Counsel for Harris immediately raised an objection. The court sustained the objection and instructed the jury to disregard the testimony. Counsel for Harris then requested a side bar conference, at which time he moved for a mistrial on the grounds that the police officer had erroneously disclosed Harris' refusal to make a statement. During the conference there was discussion as to the exact testimony given by the officer. The officer was brought into the conference and he indicated that the transcript of the proceedings accurately reflected his testimony. However, even after the witness was questioned, two defense counsel and one assistant State's attorney thought that they had heard the witness use the word "refuse." Even the court questioned the accuracy of the record.

> "I would agree, the witness volunteered more, that is when the objection occurred, the record does not reflect what in fact he did say, both attorneys differ with respect to what was said * * *."

However, the court denied the motion for a mistrial. The counsel for Harris also requested that the court poll the jury to determine the testimony which it heard from the officer, but no such poll was taken.

By Supreme Court Rule 329 (Ill. Rev. Stat. 1977, ch. 110A, par. 329), the record on appeal shall be taken as true and correct unless the procedures outlined in that rule for correcting the record have been invoked. Harris, in this case, has made no attempt to amend the record pursuant to Rule 329. However, we feel that the record of Officer Balletto's testimony must be read in conjunction with the transcript from the side bar conference, which transcript is also part of the record on appeal, which took place immediately after he made the alleged disclosure. Those proceedings indicate that even though the officer did not believe that he told the jury that Harris refused to make a statement, counsel for both the State and the defendants and even the court itself, had misgivings about the accuracy of the transcription of Officer Balletto's statement. Given this record, we feel that we must assume that Officer Balletto did, in fact, reveal to the jury that Harris refused to make a statement.

■ ■ ■ However, we do not agree that Harris is entitled to a new trial because of this disclosure. While the fact that a defendant has refused to make a statement to the police is clearly not admissible into evidence (*People v. Rothe* (1934), 358 Ill. 52, 192 N.E. 777; *People v. McDowell* (1972), 4 Ill. App. 3d 382, 280 N.E.2d 471), such an error may be deemed harmless where there is no reasonable possibility that it could have affected the conclusion of the jury. (*People v. Marchese* (1975), 32 Ill. App. 3d 872, 336 N.E.2d 795; *People v. Novak* (1967), 84 Ill. App. 2d 276, 228 N.E.2d 139.) In the present case, we think the evidence is so overwhelming in favor of Harris' guilt that the error arising from Officer Balletto's testimony was harmless.

Seven witnesses testified as to Harris' participation in the incident, including the fact that he had shot Dennis Nelson twice with a pistol. Four of these witnesses identified Harris in a lineup held following the altercation and a fifth recognized him at the police station. Significantly, two of these witnesses testified that they had known Harris before. Moreover, the error itself was not blatant as it consisted, at most, of one sentence and the jury was promptly instructed to disregard the testimony. Given these circumstances, we do not believe that Officer Balletto's testimony could have reasonably affected the jury's deliberations.

The defendants seek a new trial on the grounds that their case was prejudiced by a voluntary statement of Malzina Phillips that she had lost a baby. During cross-examination, Phillips admitted to a number of prior statements which conflicted with her in-court testimony. Following the introduction of these prior statements, the following dialogue took place:

"Q. [Defense counsel] And approximately a month and a half after

the shooting occurred you are stating that you were mistaken then as to the facts and not now?

A. [Phillips] I'm saying I was upset, I lost a child * * *."

Harris' counsel immediately objected on the grounds that the answer was not responsive to the pending question. The court called a side bar conference, at which time he overruled Harris' objection. West's counsel then moved for a mistrial based upon Phillips' disclosure and Haynes joined in the motion. This motion was also denied.

Before reaching the merits of the defendants' argument, we must address the threshold issue presented by the State, of whether the defendants waived the issue by failing to raise it in a post-trial motion. The question of the propriety of a mistrial following Phillips' disclosure was adequately presented to the trial court and it considered the issue and determined that it was unmeritorious.

■■ Following the jury's verdict, Harris filed a motion for a new trial and in arrest of judgment, in which he adopted the post-trial motions filed by his two co-defendants. The motion filed by West contains nothing which would serve to raise this issue, however, in Haynes' motion for a new trial, the following grounds were offered:

"10. That the Court erred in denying this defendant's various motions for mistrial during the course of the trial."

■■ Assuming that the issue is properly preserved on appeal, we do not believe that the defendants are entitled to a new trial because of the disclosure by Phillips. It is well established that where a witness has been impeached with prior inconsistent statements, he may be rehabilitated by introducing evidence which shows the circumstances under which the prior statements were made. (*People v. Hicks* (1963), 28 Ill. 2d 457, 192 N.E.2d 891; *People v. Owens* (1977), 46 Ill. App. 3d 978, 361 N.E.2d 644.) Defense counsel was, in effect, inviting the witness to explain the inconsistencies in her previous statements. Under the circumstances of this case disclosure was not so inflammatory that, when considering the strength of the evidence supporting the defendants' conviction, there exists a danger that the jury was improperly influenced in their deliberations.

Having found that neither of the issues raised by the defendants is meritorious, we affirm the judgment of the Circuit Court of Cook County.

Affirmed.

JIGANTI, P. J., and McNAMARA, J., concur.