THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LEON PETE HARRIS (Impleaded), Defendant-Appellant.

First District (3rd Division)    No. 77-1836

Opinion filed March 28, 1979.

Ralph Ruebner and Andrew Berman, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Pamela L. Gray, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SIMON delivered the opinion of the court:

The appellant, Leon Pete Harris, and co-defendant, Ben Dorsey, were found guilty by a jury of the murder of Rogers Walton, a taxicab driver. Harris appeals from his conviction and sentence of 14 years to 14 years and 1 day contending: (i) that he was denied his right to a speedy trial; (ii) that the jury was improperly prevented from hearing a statement made by the deceased shortly prior to his death which the defendant contends detracted from the credibility of the State's key witness; (iii) that prejudicial prosecutorial comments denied him a fair trial, and (iv) that his guilt was not established beyond a reasonable doubt.

We first consider Harris' contention that his trial was delayed in violation of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 103—5). A 60-day extension affecting Dorsey's term was requested by the State and allowed after a hearing in which both defendants were represented. The justification for the State's request was to give the prosecution additional time to locate a missing witness. The order extending Dorsey's term, which was scheduled to expire the day after the hearing, also extended Harris' term, which still had more than 30 days to run. Harris advances several reasons why the extension should not have applied to him.

First, Harris contends that the State's petition did not set forth that the State was seeking an extension of his term. Nevertheless, Harris voluntarily participated in the hearing, participation which was in no way compelled by the State. Rather, his own attorney appeared at the hearing and expressly requested the opportunity to oppose the extension. He argued that since Harris' term was to end in less than 60 days, he was also affected by the State's petition and should be allowed to participate in the hearing. The trial court agreed.

In his argument against the extension Harris' attorney never suggested, as Harris now argues, that he had not received notice of the hearing. His only argument in the circuit court was that the State was not diligent in its efforts to locate a missing witness. The defendant's failure to object on this ground in the trial court waives this objection on review. But, even if Harris did not receive proper notice, the fact remains that his attorney was present at the hearing, acknowledged that he had received a copy of the State's petition and that his client's name appeared thereon, and he argued in opposition to the extension. Thus, regardless of any shortcoming in Harris' receipt of notice, he suffered no prejudice.

Harris also argues that the hearing did not conform with the

procedure outlined in *People v. Green* (1976), 42 Ill. App. 3d 978, 356 N.E.2d 947. In that case this court stated that in a hearing on the State's request for an extension of the statutory term under the speedy-trial act "it is essential that a defendant be given * * * an opportunity to cross-examine all witnesses testifying against him and an opportunity to present evidence in support of his specific denial * * *." (*Green*, 42 Ill. App. 3d 978, 985.) These requirements were satisfied here. Harris' attorney presented his argument against the extension and also cross-examined the prosecution's witness. Defendant objects, however, that he was deprived of the opportunity to present evidence in opposition to the extension because he lacked sufficient time to obtain such evidence. On the day of the hearing Harris' attorney insisted that he be allowed to participate and made no request for additional time to obtain evidence. His present claim that he required additional time, not having been raised at that hearing, was waived.

Defendant's argument that he had no knowledge that his own term would also be extended at the hearing in question is belied by the record of that hearing. His counsel expressly asked that a specific finding with respect to his client be made at that time.

■ The defendant also contends that the trial court acted prematurely in granting the extension prior to the expiration of Harris' term. The defendant has cited no authority, and we have found none, which requires that a motion for extension under the Speedy Trial Act must be made by the State only at a time immediately prior to the expiration of a defendant's term. *People v. Moore* (1975), 27 Ill. App. 3d 337, 340-41, 326 N.E.2d 420, holds that there is no such requirement. Moreover Harris' attorney, as pointed out above, requested the court to make a specific finding with respect to his client at the hearing in question. Defendant's voluntary participation in the hearing and request with regard to his own term is equivalent to a concession that the extension was not premature. Nothing in the statute (Ill. Rev. Stat. 1975, ch. 38, par. 103—5) suggests the proper time for presenting a petition for an extension in relation to the expiration of the term. *Moore.*

■ Harris finally claims that the extension was improper because the State failed to meet the statutory requirement of showing due diligence in its efforts to find the missing witness. An investigator for the State's Attorney testified at length regarding his attempts as well as efforts of others to locate the missing witness believed to be in Mississippi. He represented that among the agencies contacted were the Post Office, the Department of Public Aid, the Mississippi Department of Public Aid, and the Biloxi, Mississippi, police department. In addition, the investigator spoke to the building superintendent of the building where the missing witness formerly lived. Neither defense attorney argued that the missing

witness was not material. Harris' attorney argued only that the facts asserted by the investigator, assuming them to be true, failed to establish due diligence. In view of the "several attempts" which the record shows, and Harris acknowledges, were made to find the witness, the trial court's decision to allow the extension should not be disturbed. A decision to grant an extension of time rests in the sound discretion of the trial judge, and his action in granting or denying the request should not be disturbed upon review unless there is a clear abuse of discretion. (*People v. Elliott* (1979), 68 Ill. App. 3d 873, 386 N.E.2d 579.) There is no evidence of such abuse here.

We next consider whether it was error to exclude as hearsay a statement made by the deceased to a police officer while he was in a hospital shortly after he had been wounded by several gunshots and shortly before he died. According to the officer, Walton, who was shot while sitting in the driver's position in his cab during a holdup, said that he "thought his passenger set him off." Gene Williams, who was the prosecutor's key eyewitness, was a passenger in Walton's cab at the time of the shooting, and the defendant maintains that this statement implicated Williams in the crime and should have been admitted under the hearsay exceptions for dying declarations or spontaneous excited utterances. It is not necessary to decide whether the statement qualifies as an exception to the hearsay rule because the statement itself was so ambiguous that the trial judge's decision to exclude it was proper.

It is impossible to determine from the police officer's account of the victim's statement what it was that the victim meant. The content of the statement is vague and the identity of the person to whom it relates is unclear. The defendant contends the deceased in making the statement was implicating Williams as having "set him up" for the robbery. The words however which were related by the police officer were "set him off" and these words have no discernible meaning. Equating these words with "set him up," as Harris insists should be done, is merely conjecture.

The ambiguity of the statement is compounded by the uncertainty over the identity of the person to whom the deceased was referring. Though Williams, who remained with the wounded driver until the police arrived, was the only passenger in the cab when the shooting took place, the record discloses that another rider had been in the cab shortly before the crime occurred. The presence of this second passenger, identified only as "Eddie," leaves the suggestion that the deceased was referring to Williams rather than "Eddie" or someone else, an untenable speculation. It is unclear how the statement of the deceased, even if admitted in evidence, would have had any probative value or could have added anything meaningful for the jury's deliberation. Even if the trial judge erred in excluding the statement, because of the statement's ambiguity,

the error was harmless. In any event the statement failed to exonerate the defendant.

■ We next consider whether certain remarks by the prosecution denied Harris a fair trial. Harris asserts that prejudice occurred when the jury was twice exposed to the existence of an eyewitness to the murder who did not testify. The jury was so informed first during the prosecution's opening statement and again during the direct examination of one of the State's witnesses. There is little doubt that these remarks were improper, for when statements "are not based upon evidence admitted at trial, [they] may not properly be argued to the jury." (*People v. Rogers* (1976), 42 Ill. App. 3d 499, 502, 356 N.E.2d 413.) Such impropriety, however, necessitates a reversal only when there has been substantial prejudice to the defendant. (*People v. Kitchen* (1977), 53 Ill. App. 3d 521, 524, 368 N.E.2d 528.) In both instances prompt defense objections were sustained, thus preventing the jury from hearing the prejudicial evidence.

Neither counsel nor the judge could prevent an assistant state's attorney while testifying as a State's witness from referring to the missing witness. Nevertheless, the court effectively stopped the State from introducing any further references to the missing witness. The trial judge observed in denying a motion for a mistrial that he did not regard these comments as "substantially tainting the case," and he was in a better position than this court to determine what effect the improper statement and answer might have had upon the jurors. *People v. Smothers* (1973), 55 Ill. 2d 172, 302 N.E.2d 324.

■ Harris next claims that he was prejudiced when the prosecution in its closing argument mentioned, "I want you to listen to the points that I deleted from that [Dorsey's] written statement." Harris argues that this remark prejudiced him by bringing to the jury's attention that the court earlier had excised certain portions of Dorsey's statement that implicated Harris. However, a colloquy outside the presence of the jury revealed that the deletions in question were those the prosecutor had voluntarily made and not those which the court had previously ordered. The court, aware of the nature of the deletions that the prosecutor was referring to, properly allowed the prosecution to continue its reference to them. Even if the jury had misconstrued how the deletions happened to be made, nothing in the record suggests that it could have inferred that the substance of the deletions implicated Harris.

■ Harris also complains of other remarks by the prosecutor in his closing argument, including references to the absence of deals with or promises to Gene Williams—who then was under indictment for possession of a controlled substance, to the absurdity of various defense arguments, and to whether Williams was a drug addict as the defense had claimed. After each of these statements, the defendant offered prompt

objections which were immediately sustained. Consequently, even if the prosecutor's comments were improper, their effect cannot be regarded as prejudicial. "It is not the policy of this court to reverse a judgment merely because error has been committed unless it appears that real justice has been denied or that the finding of guilty may have resulted from such error." (*People v. Olivier* (1972), 3 Ill. App. 3d 872, 878, 279 N.E.2d 363, 367; see also *People v. Daugherty* (1969), 43 Ill. 2d 251, 253 N.E.2d 389; *People v. Haynes* (1978), 62 Ill. App. 3d 199, 202, 379 N.E.2d 24.) It appears to us that the defendant's conviction was the result of an eyewitness' incriminating testimony and not questionable prosecutorial comments to which objections were sustained.

Harris maintains that because his conviction rests solely upon the testimony of Gene Williams—a person he labels an incredible and unreliable witness—he was not proven guilty beyond a reasonable doubt. Harris argues Williams' testimony should be viewed with great suspicion because of his prior criminal history and drug habit, and the victim's statement to the police shortly prior to his death. Harris argues that Williams actually took part in the shooting and that his account of the crime was a fabrication necessitated by the unexpected arrival of the police. Harris also asserts that Williams' identification of him from a photograph of a lineup was a product of this fabrication, because he was the only person in the lineup who matched Williams' description of one of the assailants. Finally, Harris points to testimony that Williams tried to shake him down as well as his family by offering to leave town in exchange for cash.

Harris' argument amounts to an attack upon Williams' credibility. The examples of Williams' alleged unreliability, which Harris raises, do not automatically disqualify Williams as a witness. Rather, they were matters for the jury to consider in its deliberations, for "[a] reviewing court may not substitute its judgment for that of the trier of fact 'on questions involving the weight of the evidence or the credibility of the witnesses [citations].' " (*People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313.) The jury's verdict is supported by the evidence, and we should not assume the function of the jury by re-evaluating the credibility of a witness who the jury, as the trier of fact, heard and saw.

Judgment affirmed.

McNAMARA and McGILLICUDDY, JJ., concur.